UNITED STATES, Appellee

v

GEORGE W. COLE, Fireman Recruit, U. S. Navy, Appellant

17 USCMA 296, 38 CMR 94

No. 20,108

December 1, 1967

*Lieutenant Warren K. Morgens*, USNR, argued the cause for Appellant, Accused.

*Lieutenant William A. Carnahan*, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel C. R. Larouche*, USMC, and *Major Ernest B. Wright*, USMC.

Opinion of the Court

QUINN, Chief Judge:

The accused was arraigned before a special court-martial convened by the Commanding Officer, United States

Naval Station, Washington, D. C., on two charges in violation of the Uniform Code of Military Justice. One charge alleged the larceny of clothing belonging to another sailor; the other set out a violation of Navy regulations. The accused pleaded not guilty to the first and guilty to the second, but was convicted of both charges, and sentenced to a bad-conduct discharge, confinement at hard labor for six months, and partial forfeiture of pay. The convening authority affirmed the findings of guilty and the sentence. The supervisory authority also affirmed the findings, but modified the sentence by reducing the confinement to four months.

For the first time in the proceedings against him, the accused contends the court members were subject to command control. His contention is predicated upon the command's Plan of the Day for August 31, 1966, and a Memorandum by the convening authority, dated August 26, 1966. The Government concedes these documents were "posted on various bulletin boards and circulated in certain offices" within the Naval Station. Post-trial statements by four of the five court members who heard the case indicate two of them had read the Plan of the Day before trial.[1]

Among other things, the Plan of the Day contained a notice about the actions taken by the commander at mast on August 25. One of these actions related to the accused. It indicated he was charged with larceny, and that the charge had been referred to a special court-martial for trial. The Plan was apparently accompanied by the Memorandum, which is titled "Petty Thievery." Part of the Memorandum is patently absurd. For example, referring to a story about a thief aboard "an old coal burning battleship," which was told the commander when he "was a young sailor," it observes that the thief was thrown by his shipmates into the boiler of the ship, and it implies this might still be a valid form of punishment. Other parts of the Memorandum stamp the commander as unreconciled to the Uniform Code's endeavor to correct the abuses of earlier court-martial practice by shielding court members from command directives calculated to pressure them in their deliberations. Although not mentioned by name, the Memorandum refers to the accused's case as one in which the commander "determined to use all the means at . . . [his] disposal to deter and to punish thieves." The reference leaves the reader convinced that, in the opinion of the commander, the accused was guilty of the larceny charge and deserved more than "minor punishment."

Although not separately recited, the accused's allegation of command control has two aspects. The first is concerned with the impact of the Plan of the Day and the Memorandum on the court members; the second is concerned with their effect on the propriety of review of the case by the commander. See United States v Plummer 7 USCMA 630, 23 CMR 94.

A commander is allowed substantial latitude before trial to instruct prospective court members as to their responsibility, fairly and impartially, to judge the evidence in the case and to impose an appropriate sentence in the event of conviction. See United States v Albert, 16 USCMA 111, 36 CMR 267. Too often, however, the instruction has included strong representations of the commander's personal opinions and desires, which seriously compromise the court members' freedom of decision. One of the basic objectives of the Uniform Code of Military Justice is to eradicate this misuse of command power, but unfortunately total success has not yet been realized. Perhaps it never will be because of the vagaries of human nature. This Court, however, is dedicated to the Code's objective to protect the court-martial processes from improper command influence.

Government counsel contend that neither the fact nor the shadow of command control is present in this

---

[1] The Government informs us the fifth member is on duty in the Pacific area, and efforts to obtain a statement from him have been unsuccessful.

case. They point to the *voir dire* of the court members by defense counsel as clearly demonstrating that the court members were not influenced by the Plan of the Day and the Memorandum. They also refer to the disclaimers of influence in the statements of the two court members who read the documents as proof of the absence of command influence. If the statements dispel doubts in this area, one of them raises doubt as to the correctness of the member's response on the *voir dire*. Defense counsel asked the court members whether they had any "knowledge" of an "official notice" such as the Plan of the Day which "may have any bearing on this case." There was no response by any court member. However, in his post-trial statement, one member admitted he saw the Memorandum before trial and "probably saw" the Plan of the Day. He is silent as to whether he recalled his reading of either or both documents at the time of the *voir dire*. See United States v Schuller, 5 USCMA 101, 105, 17 CMR 101. It is also noted that none of the Government's argument reaches the question of the convening authority's disqualification to review the record of trial because of bias.

Neither the issue of command control, nor the other assignments of error, impugn the validity of the accused's plea of guilty to the charge alleging the violation of a Navy regulation. This circumstance, and the fact that the period of confinement has long since expired, make it unnecessary for us to examine each of the assignments of error. In our opinion, the interests of justice in this case can be best advanced by setting aside the larceny findings and reassessing the sentence.

The findings of guilty of Charge I and its specification are set aside, and the charge is ordered dismissed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the board of review to reassess the sentence on the basis of Charge II and its specification, to which the accused pleaded guilty, and in light of the assignment of error dealing with the effect of the disclosure of uncharged misconduct. See United States v Rodriguez, 17 USCMA 54, 37 CMR 318.

Judges FERGUSON and KILDAY concur.