**UNITED STATES**

v.

**Technical Sergeant Antonio RODRI-GUEZ, FR 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, United States Air Force.**

**ACM 23761.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 July 1982.

Decided 8 Aug. 1983.

---

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Conrad C. Baldwin, Jr.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Lieutenant Colonel Andrew J. Adams, Jr., and Captain Brenda J. Hollis.

Before HODGSON, HEMINGWAY and MILLER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The accused asserts he was the victim of "unlawful command influence" exerted by his squadron commander which completely stifled his ability to prepare for trial.[1] In his view the commander's actions amounted to intimidation of potential defense witnesses and had a "chilling effect" on the entire proceedings. To resolve this issue we think it appropriate to discuss in some detail the circumstances giving rise to this assignment of error.

On 2 April 1982, charges alleging drug abuse were preferred against the accused by his squadron commander, Lieutenant Colonel Nicola. In this same general time frame Nicola also initiated administrative discharge proceedings for drug abuse against a Sergeant S. The record suggests that Sergeant S. had been recommended for a discharge under other than honorable conditions, and to defend against this result, Sergeant S. obtained 19 signatures on a document attesting to his "exemplary military bearing, character, attitude and accomplishments." The signatories included officers, senior noncommissioned officers, and associates of Sergeant S.

After becoming aware of this document, Nicola had a meeting in his office with the signers. The thrust of the discussion, according to those present, was that Nicola considered them to be "backstabbers" and "disloyal;" and by signing the statement they appeared to be condoning drug abuse.[2] Nicola testified at the accused's trial that he considered the initiation of an administrative discharge action to be a "command decision," and once that decision was made the squadron should speak as "one voice." He admitted that the people at the meeting could have interpreted that as applying to courts-martial as well as administrative boards. Nicola stated that the possibility of "reprisal" was not mentioned at the meeting, and he had never taken any adverse action against anyone who testified for an accused in a court-martial as that was not appropriate.

Defense counsel asked that the charges be dismissed contending that it was well known in the squadron that anyone helping an individual accused of drug abuse would risk Nicola's displeasure.[3] Several witnesses testified, in support of the motion to dismiss, that as a result of the meeting, finding favorable information in support of the accused would be difficult if not impossible. Defense counsel also averred that when they attempted to interview witnesses about the case, many times that person would "drop his eyes" and say "no comment."

The trial judge accepted *arguendo* that the appearance of "improper command influence" was present, but attempted to "neutralize" its effect. In denying the ac-

---

1. Contrary to his pleas the accused was convicted of multiple drug offenses involving the wrongful use of marijuana and cocaine. He was sentenced to a bad conduct discharge, confinement at labor for two years, forfeiture of $200.00 per month for 24 months, and reduction to airman basic.

2. At trial there appeared to be a reluctance to testify as to what took place at the meeting. Only one witness, a captain, appeared and indi-

cated she still felt intimidated, but would testify about the meeting and "take [her] chances." She also stated that a master sergeant who had heard about the meeting told her, "I wouldn't even sign another enlistment statement."

3. There was testimony that the meeting was widely discussed by members of the accused's squadron.

cused's motion to dismiss the charges he stated:

I will compel the attendance of any witnesses you desire.

I will ... advise these witnesses of their duty to testify honestly and forthrightly, and I will be doing that in an Article 39(a) session.

If witnesses do come forward and appear reluctant, I will grant recesses and continuances as necessary for [the accused] to interview them.

I will recall Colonel Nicola ... and advise him of his obligation not to attempt to interfere in the orderly administration of justice, including *intimidation of potential witnesses* .... [Emphasis supplied.]

Defense counsel argued that the remedy fashioned by the trial judge did not dispel the aura of improper command influence, and dismissal of the charges was the only proper course of action. They assert that unless members of the accused's squadron are willing to discuss the case, the right to compel their attendance is of little value. They also requested a 25 day continuance to make further inquiries within the accused's squadron; the military judge denied the request.

Appellate government counsel maintain that the accused suffered no prejudice from Nicola's actions, and that the remedial measures initiated by the trial judge, though not required, were entirely adequate. They suggest that the seriousness of the charges and the accused's past duty performance explain why the defense had difficulty obtaining witnesses to testify on the accused's behalf, and not any alleged improper command influence.

It is a bedrock principle of military justice that every person tried by court-martial is entitled to have his guilt or innocence, and his sentence, determined solely upon the evidence presented at trial, free from all unlawful influence exerted by military superiors or others. *United States v. Ishell,* 3 U.S.C.M.A. 782, 14 C.M.R. 200 (1954). This includes the right to witnesses testifying in his behalf who do so without fear of

reprisal. *United States v. Charles,* 15 M.J. 509 (A.F.C.M.R.1982).

An allegation of unlawful command influence is *rara avis,* and hopefully will soon be extinct. However, when it does arise it should be resolved in a manner that will foster public confidence in court-martial proceedings. *United States v. Rosser,* 6 M.J. 267 (C.M.A.1979). In *United States v. Cole,* 17 U.S.C.M.A. 296, 297, 38 C.M.R. 94, 95 (C.M.A.1967), Chief Judge Quinn, writing for a unanimous court, said:

One of the basic objectives of the Uniform Code of Military Justice is to eradicate ... misuse of command power, but unfortunately total success has not yet been realized. Perhaps it never will be because of the vagaries of human nature. This Court, however, is dedicated to the Code's objective to protect the court-martial processes from improper command influence.

As an intermediate appeals court, we can do no less.

 The test for prejudice from unlawful command influence is *not* merely whether such influence *actually* existed but whether there is an appearance of such influence. The appearance of the evil of command influence is as much to be avoided as the actual use of such influence. *United States v. Rosser, supra; United States v. Rosa,* 46 C.M.R. 480 (N.C.M.R. 1972). Appearance of unlawful command influence provides a presumption of prejudice, but the presumption is rebuttable. *United States v. Crawley,* 6 M.J. 811 (A.F.C. M.R.1978). Appellate government counsel urge that there was no prejudice, but if there was it was rebutted as no witness called by the accused on this issue stated they would refuse to testify. Addressing a similar contention by the government in *United States v. Rosser, supra,* Chief Judge Fletcher observed:

Military law has traditionally viewed such perfunctory statements from subordinates on the effects of command influence as inherently suspect not because of the credibility of the witness but because of the difficulty of the subordinates in

ascertaining for himself the effect of any attempted command influence.

We find this observation to have application to the case at bar. Additionally, government counsel assert that remedial steps taken by the trial judge removed any remaining vestiges of prejudice. We commend the military judge for the action he took to "neutralize" the improper command influence, but under the facts of this case it was just not enough.[4] *See United States v. Rosser, supra.* In our view "the appearance of evil in [this] courtroom" and our desire to "foster public confidence" in the military justice system require that we set aside the accused's conviction.

The exercise of unlawful command influence may be cured by a rehearing and does not require dismissal of the charges. *United States v. Stringer,* 5 U.S.C.M.A. 122, 17 C.M.R. 122 (1954); *United States v. Ferguson,* 5 U.S.C.M.A. 68, 17 C.M.R. 68 (1954); *United States v. Olivas,* 26 C.M.R. 686 (A.B. R.1958); *United States v. Rosser, supra.* We note that Lieutenant Colonel Nicola is no longer the squadron commander and has not been for over a year. The harmful effects of his remarks have been dissipated.

The findings of guilty and the sentence are set aside. A rehearing is ordered.

HEMINGWAY, Senior Judge concurs.

MILLER, Judge, concurring:

I would not characterize the conduct of the squadron commander in this case as "unlawful command influence." To me, "unlawful command influence" is a term of art, the usage of which should be confined to a description of those activities proscribed by U.C.M.J., Article 37, 10 U.S.C. § 837.

In this case, Lieutenant Colonel Nicola was neither the convening authority nor in the convening authority's superior chain of command; none of the court members, all of whom were appointed by the convening authority, were in Lieutenant Colonel Nicola's subordinate chain of command; and there is absolutely no indication that Lieutenant Colonel Nicola, either on a frolic of his own or on behalf of either the convening authority or someone in the convening authority's superior chain of command, made any attempt whatsoever to coerce or influence any member of this court-martial in its collective action.

To the contrary, the evidence cited by the majority indicates that in an unrelated incident, sometime prior to this trial, Lieutenant Colonel Nicola had lectured certain members of his squadron, who were signatories to an unauthorized petition, against signing any future after-the-fact petitions questioning their commander's decision to initiate administrative discharge proceedings against squadron members. During this lecture, Lieutenant Colonel Nicola pointed out that those individuals who signed this unauthorized petition could have presented their views much more effectively if they had presented them to Lieutenant Colonel Nicola, prior to his decision to initiate the discharge action in the first instance.

Unfortunately, although such a lecture was probably both a necessary and proper exercise of a squadron commander's prerogative under those circumstances, its timing and rhetoric may, as indicated in the majority opinion, have interfered with the instant accused's ability to obtain witnesses to testify on his behalf at the instant trial.

In essence, Lieutenant Colonel Nicola's lecture, may have inadvertently had the effect of intimidating potential witnesses who could possibly have testified on the accused's behalf.

4. A possible solution could have been a commander's call by Lieutenant Colonel Nicola wherein he reaffirmed the accused's right to call witnesses in his defense, be it on the merits or during sentencing, and that it was the duty of those having favorable information to disclose it to either the accused or his attorneys.

The trial judge would then grant a reasonable continuance to permit the defense to interview potential witnesses. We are not suggesting that this approach would "neutralize" every allegation of unlawful command influence, but it is a remedy worth weighing.

Accordingly, perceiving a distinct possibility of patent prejudice, I concur in the majority's decision to set aside the finding and sentence in this case and in its order for a rehearing.