**UNITED STATES**

v.

**Airman First Class William C. LOWERY, FR 153–62–9233, United States Air Force.**

**ACM 24212.**

U.S. Air Force Court of Military Review.

27 June 1984.

Sentence Adjudged 2 Sept. 1983.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Captain Brenda J. Hollis and Captain Kevin L. Daugherty.

Before HODGSON, FORAY and O'HAIR, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

In *United States v. Charles*, 15 M.J. 509 (A.F.C.M.R.1982), we held that a commander may not attempt to improperly influence a prospective defense witness, and to do so is wrong and indefensible. In the case, *sub judice*, appellate counsel argue that it is equally improper for those in the accused's chain of command to question a defense witness *after* he has testified in an attempt to dissuade him from testifying in like cases in the future. They consider this to be an insidious practice that undermines the integrity of the military justice system. They suggest that this court administer "a strong judicial remedy" whenever it appears that improper command conduct has interfered with the sentencing process regardless of whether the accused, has, in fact, been prejudiced. In their view a proper remedy would be to affirm a finding of guilty where it is supported by the record, but a sentence to "no punishment."

In resolving this issue we think it appropriate to discuss the pertinent facts. The accused was convicted of various drug offenses. During the sentencing portion of the trial, Master Sergeant Smith, his immediate supervisor, testified that the accused was the "best troop" that he had ever had in almost 19 years service. He urged that the accused be retained in the service despite his conviction for drug abuse.*

Sergeant Smith stated in an affidavit that the first duty day following the trial

---

* The accused's commander, Lieutenant Colonel Frederick F. Haddad, was a spectator during defense counsel's argument on sentence, and when she suggested that the accused could be administratively discharged, as opposed to being separated with a punitive discharge, he was seen by the trial judge shaking his head, "no." We commend the trial judge for his prompt

he was directed to report to the wing first sergeant, Chief Master Sergeant Vernon L. Freeman. Upon arriving at Chief Freeman's office he discovered that his commander, Lieutenant Colonel Haddad was there. In a meeting that lasted approximately an hour, Chief Freeman implied that he (Freeman) was a "failure" if one of his senior noncommissioned officers testified on behalf of a drug abuser; that Smith's actions made it appear that he condoned the use of drugs; that Smith should not want someone like the accused back; and that Smith did not deserve to be a senior noncommissioned officer. Sergeant Smith further related that he left Freeman's office depressed and felt like he "had failed the enlisted corps, the Air Force, the military, the American people as well as myself." While not said by Freeman, Smith was left with the impression that he had better consider his military career "before ever getting involved again." Furthermore, Smith indicated that he "wouldn't want to testify for anyone again."

Appellate government counsel concede that defense witnesses should not be "debriefed" by the command structure as to the content of their testimony or be held accountable for opinions honestly held and given under oath, but maintain that the present situation is separate from when witnesses are called to account for their testimony. They offer the affidavits of Freeman and Haddad to the effect that Freeman's conversation with Smith was "completely professional and dealt totally with the Air Force's policies on drug offenders and NCO/supervisor responsibilities." Both individuals denied suggesting to Smith that he was wrong in testifying or that he was in "trouble." Colonel Haddad did indicate, however, that the issue discussed was Smith's willingness to accept back an individual who was convicted of nine specifications of drug abuse and who had influenced others to become involved. Government counsel urge there is a distinction between instruction and intimidation,

and that line was not crossed here. Finally, the Government submits that accepting, *arguendo*, that the actions of Haddad and Freeman were improper, the accused suffered no harm.

While we agree with this last conclusion that the accused has not been harmed in *his* trial, there are aspects of this case that sorely trouble us. An accused is entitled to witnesses who can testify in his behalf without fear of improper influence or *reprisal*. *United States v. Charles, supra*. The policy of "lecturing" a defense witness or any witness after they have testified cannot help but have a chilling effect on our judicial system. We reaffirm what we said in *United States v. Rodriguez*, 16 M.J. 740, 742 (A.F.C.M.R. 1983), that the appearance of improper influence is as much to be avoided as the actual use of such influence. The actions of Haddad and Freeman were improper and cannot be condoned regardless of how the questions were couched or how many assurances were given. However, since the accused has demonstrated no prejudice that accrued to him, we decline, at this time, to invoke "the strong judicial remedy" he seeks. We are confident that those charged with administering military justice share our concern, and will insure that this situation does not recur. The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and O'HAIR, Judge concur.

action in avoiding the possibility of prejudicial error.