UNITED STATES

v.

Sergeant Samuel L. TUCKER, FR 251–08–8968, United States Air Force and Staff Sergeant Joseph C. Tullis, FR 562–94–0418, United States Air Force.

ACM 23896 (f rev) and 23971 (f rev).

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 Nov. 1982.

Decided 3 July 1985.

Appellate Counsel for TUCKER: Colonel Leo L. Sergi and Lieutenant Colonel Michael D. Wims and Major Alexander S. Nicholas.

Appellate Counsel for TULLIS: Colonel Leo L. Sergi and Major Conrad C. Baldwin, Jr.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Robert E. Ferencik, Jr.

Before HODGSON, FORAY and MURDOCK, Appellate Military Judges.

DECISION UPON FURTHER REVIEW

HODGSON, Chief Judge:

In *United States v. Rodriguez*, 16 M.J. 740 (A.F.C.M.R.1983), we expressed a belief that allegations of unlawful command influence in the Air Force are not in keeping with a fair and impartial military justice system. However, based upon the facts before us, it appears that we were overly optimistic in that assessment. In the cases at bar, which have been joined for appellate review, both appellants argue that the actions of their squadron commander had a "chilling effect" on potential defense witnesses which deprived them of a fair trial. To resolve this issue we deem

it necessary to set out the procedural history of these appeals and to discuss in some detail the circumstances giving rise to this assignment of error.

## I

Both Staff Sergeant Tullis and Sergeant Tucker were assigned to the 435th Aerial Port Squadron located at Rhein-Main Air Base, Germany. This organization was commanded by Colonel John O. Kiser, whose activities are the focal point of this appeal. On 30 November 1982, Tucker pled guilty to possessing and transferring cocaine. The approved sentence extended to a bad conduct discharge, confinement for nine months, total forfeitures and reduction to airman basic. Approximately two weeks later, 16 December, Tullis was convicted, following a not guilty plea, of various drug offenses involving the use, transfer and possession of marijuana, and possession of drug abuse paraphernalia. He was sentenced to a dishonorable discharge, two years confinement, total forfeitures, and reduction to airman basic. Both individuals were represented by the same counsel, who moved to dismiss the charges in each trial because of unlawful command influence. The trial judge denied the motion in each instance.

The Tullis and Tucker records of trial came before this court in the ordinary course of appeal, where the question of unlawful command influence on Colonel Kiser's part was again raised. Because of our concern in this area, and as the record in each case was not sufficiently complete to allay that concern, we ordered a joint *Dubay* hearing[1] to develop this topic to the fullest possible extent. *United States v. Tucker*, 17 M.J. 519 (A.F.C.M.R.1983); *United States v. Tullis*, Unpublished A.C.M. 23971 (A.F.C.M.R. 19 October 1983). This hearing was held 5–14 March 1984 and in summary disclosed the following facts.

In mid-January 1982, Senior Airman Robert H. Schott, a member of the appellants' organization, pled guilty to four allegations of drug abuse. Six enlisted witnesses testified in his behalf during the sentencing portion of the trial. The last of these witnesses was the operations superintendent of air terminal activities, Chief Master Sergeant Ralph B. Berkebile. Chief Berkebile considered Schott to be an asset to the Air Force and recommended his retention. Colonel Kiser and his first sergeant were present at the Schott trial and, according to Berkebile, it was readily apparent that his (Berkebile's) testimony was displeasing to Kiser.

Berkebile testified that, subsequent to the trial, Kiser directed that he report to the latter's office. The gist of Kiser's comments was that Berkebile's involvement at the trial "was absolutely inappropriate" and that he, Berkebile, had "scuttled [a] case that had been developed over ... many months" and had managed to keep an individual on active duty who "should have been out on the street." In his testimony Kiser stated he did not recall this conversation with Berkebile, but his appointment book reflected a meeting with Berkebile on 18 January 1982. The trial judge conducting the *Dubay* hearing found that the meeting took place.

It was Kiser's policy to meet with his senior non-commissioned officers on a monthly basis. Berkebile was present at the 22 January meeting where Kiser referred to an unnamed "senior non-commissioned officer" testifying at a court-martial and whose conduct in doing so he considered to be "unacceptable, ... unprofessional [and] not in the best interests of the Air Force." Kiser suggested at the meeting that the "whole man concept" had application to courts-martial and prospective witnesses for an accused should go to the orderly room and check that individual's records before testifying in his behalf. Berkebile indicated he was concerned about Kiser's reaction to his testimony in the Schott trial, and had two meetings with him to discuss it. Nothing came of these discussions as Kiser was still upset over his testimony. On 21 October 1982, Chief Ber-

---

1. *United States v. Dubay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

kebile testified on behalf of Sergeant David Gordon, who had been convicted of drug abuse. Again he indicated that that particular accused had a potential for further military service. Colonel Kiser also attended this trial as a spectator. In February 1983, Berkebile was transferred to another organization.[2]

During a commander's call on 9 and 10 November, Colonel Kiser identified Tullis and Tucker along with two others as individuals whose trials for drug-related offenses were to begin shortly. He advised those present to disassociate themselves from the individuals pending trial.

About a week later and after allegations of unlawful command influence on his part had been made, Colonel Kiser, apparently on the advice of the wing staff judge advocate, called a meeting of all available officers and noncommissioned officers. At this meeting he read a prepared statement clarifying his earlier remarks suggesting disassociation from those about to be court-martialled. He stated it was never his intention to preclude anyone from testifying and if anyone had any information helpful to an accused it was his duty to testify.

From the testimony at the *Dubay* hearing it is very apparent that members of the Aerial Port Squadron were well aware that Chief Berkebile had fallen into disfavor with Colonel Kiser because of Berkebile's testimony at the trials of Schott and Gordon favoring their retention. It is also apparent that many squadron members were extremely reluctant to recommend that a drug offender be retained. One senior noncommissioned officer stated he was "relieved" that he would not be on base at the time of a trial and therefore could not be called as a mitigation witness. Other witnesses indicated they were hesitant about becoming involved in pending trials because of what they perceived to be Colonel Kiser's views about supporting those persons convicted of drug offenses.

A master sergeant testified that he had had a "successful [career] in the Air Force" and "did not want to be involved" and it was better for him to "stay neutral."

## II

Nothing erodes public confidence in the military justice system as quickly as the perception that the outcome of a trial, be it findings or sentence, is preordained by the improper exercise of a command position. One of the basic objectives of the Uniform Code of Military Justice is to eradicate the misuse of command power. *United States v. Cole*, 17 U.S.C.M.A. 296, 38 C.M.R. 94 (C.M.A.1967).

As we observed in *United States v. Rodriguez, supra* at page 742:

The test for prejudice from unlawful command influence is *not* merely whether such influence *actually* existed but whether there is an appearance of such influence. The appearance of the evil of command influence is as much to be avoided as the actual use of command influence. Appearance of unlawful command influence provides a presumption of prejudice, but the presumption is rebuttable, (citations omitted) (emphasis in original).

Appellate government counsel concede that Colonel Kiser was less than temperate in his remarks and behavior, but, nevertheless, argue that such conduct did not amount to unlawful command influence. They further maintain that if accepting, *arguendo*, that Kiser's actions were improper, the presumption of prejudice was rebutted as no witnesses stated they would refuse to testify. We are not swayed by this argument, because such statements are inherently suspect due to the difficulty in ascertaining the effect of any attempted command influence on subordinates. *United States v. Rosser*, 6 M.J. 267 (C.M.A. 1979).

---

**2.** We note without comment that on 28 September 1982, Colonel Kiser did not recommend Chief Berkebile for extended high year of tenure. The effect of this recommendation was that Berkebile would not be permitted to re-main on active duty beyond 30 years. *See* Air Force Regulation 35–16, The USAF Reenlistment, Retention and NCO Status Programs, Para 6–18 and Table 6–2, Item 19 (27 April 1984).

■ We acknowledge fully that a commander is charged with the responsibility of maintaining discipline and efficiency within his organization and to this end he is required to supervise the activities of his subordinates. The "delicate balance" referred to in *United States v. Littrice*, 3 U.S.C.M.A. 487, 13 C.M.R. 43 (1953) is to maintain this responsibility, but to exercise restraint when overseeing military justice matters. One goal a commander must achieve is to avoid unlawful interference with the discretionary functions his subordinates must perform. *United States v. Treakle*, 18 M.J. 646 (A.C.M.R.1984). The decision to testify for an accused during the sentencing phase of a trial is a discretionary function of the witness, subject of course, to the tactical judgment of the accused's counsel. Such testimony should be given freely without fear of reprisal. *United States v. Charles*, 15 M.J. 509 (A.F. C.M.R.1982). The adversary nature of the military justice system insures that a witness has a factual basis for the testimony he or she gives.

We have repeatedly held that the vetting of witnesses in an attempt to influence future testimony is improper and has a "chilling effect on our judicial system." *United States v. Lowery*, 18 M.J. 695 (A.F. C.M.R.1984); *United States v. Charles, supra*. No doubt Colonel Kiser thought he was acting with the best of motives, but his conduct upset the "delicate balance" between what is proper and what is an unjustified intrusion into the court room.

■ The sum total of the evidence taken at the *Dubay* hearing and at the trials themselves leaves an unmistakable impression that Colonel Kiser attempted to inhibit favorable mitigation testimony and that he was successful.

Our desire to foster public confidence in the military justice system, and to cast out the appearance of evil in military courtrooms, requires that we take some remedial action as to both trials.

■ Appellate defense counsel suggest that the only appropriate remedy is dismissal of the charges. We disagree. As stated in this opinion, both appellants were represented by the same trial defense counsel, albeit in different trials for different charges. In both trials the thrust of his argument on the issue of unlawful command influence was that Colonel Kiser's actions hampered him in obtaining mitigation witnesses. Because Sergeant Tucker entered a plea of guilty, command influence as to sentencing witnesses would not affect the findings of guilty. *United States v. Johnson*, 14 U.S.C.M.A. 543, 34 C.M.R. 328 (1964); *United States v. Rosa*, 46 C.M.R. 480 (N.C.M.R.1972); *see United States v. Treakle, supra*. While Staff Sergeant Tullis contested the strength of the government's case against him, the evidence is compelling and his defense on the merits was not hindered by Colonel Kiser's improper pretrial activities. Trial defense counsel acknowledged that no one who had favorable evidence refused to testify in the case in chief. Thus the impact of Kiser's impetuous behavior was limited to the availability of mitigation witnesses. Military accused are guaranteed a fair trial, which includes a court-martial that is free from any unlawful influence exerted by a military superior. *United States v. Treakle, supra*, 666. The corrective action we think appropriate is stated in the decretal paragraph of this opinion.

III

■ Appellate counsel for Tullis contend the prosecution did not establish beyond a reasonable doubt that the substance allegedly used in Specification 3 of Additional Charge II was hashish. The identification of the contraband was supplied by a government witness who testified he was familiar with the odor and appearance of hashish. As we have stated many times, the identity of a drug may be proved through the testimony of a witness who, though not an expert in the technical sense, has established a familiarity with the substance. *United States v. Evans*, 16 M.J. 951 (A.F.C.M.R.1983). We are convinced beyond a reasonable doubt that the appellant used the contraband at the time and

place alleged. Article 66(c), 10 U.S.C. § 866(c), U.C.M.J.; *United States v. Accordino*, 15 M.J. 825 (A.F.C.M.R.1983); *remanded on other grounds*, 20 M.J. 102 (C.M.A.1985).

## IV

The findings of guilty as to each appellant are affirmed. For the reasons heretofore stated the sentence as to each appellant is set aside. A rehearing as to each on sentence is ordered.

FORAY, Senior Judge, and MURDOCK, Judge, concur.

**UNITED STATES**

v.

**Senior Airman Michael A. ROA, FR 564–19–5349, United States Air Force.**

**ACM 24730.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 14 Nov. 1984.

Decided 18 July 1985.

Appellate Counsel for the Accused: Colonel Leo L. Sergi, Captain Timothy J. Malloy and Major Francis T. Lacey, USAFR.