UNITED STATES, Appellee,

v.

Jeffery C. KITTS, Machinist's Mate Second Class, U. S. Navy, Appellant.

No. 51,444.
NMCM 84-1582.

U.S. Court of Military Appeals.

Dec. 1, 1986.

For Appellant: *Lieutenant John B. Consevage, JAGC, USNR* (argued); *Lieutenant Commander Alvin L. McDonald, JAGC, USN* (on brief); *Lieutenant Colonel M.W. Lucas, USMC,* and *Lieutenant Timothy D. Persons, JAGC, USNR.*

For Appellee: *Lieutenant David O. Vollenweider, III, JAGC, USNR* (argued); *Captain Carl H. Horst, JAGC, USN* and *Lieutenant Steven P. Benson, JAGC, USNR* (on brief); *Captain W.J. Hughes, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

On December 5, 1983, appellant was tried by general court-martial on board the USS INDEPENDENCE (CV–62), while the ship was at sea. Pursuant to his negotiated pleas, he was convicted of conspiracy to distribute lysergic acid diethylamide (LSD), possession of LSD with intent to distribute

(two specifications), and distribution of LSD (five specifications), in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934, respectively. A military judge sitting alone sentenced him to confinement for 5 years, total forfeitures, reduction to E–1, and a bad-conduct discharge. As it was impracticable for him to act, the convening authority had the case forwarded for action to another officer authorized to exercise general court-martial jurisdiction. Whereupon, the sentence was approved, but a portion of the forfeitures was suspended in accordance with the sentence-limiting provisions of a pretrial agreement.

The case initially was submitted to the Court of Military Review without assignment of error. That court affirmed without opinion on May 9, 1984. Subsequently, appellate defense counsel submitted various documents to the Court of Military Review and moved for reconsideration and a hearing on the basis of allegations of unlawful command control. The motion was denied on September 26, 1984, and appellant petitioned this Court for review.

We granted review to determine whether the post-trial allegations of unlawful command control warranted further inquiry.[1] We hold that a formal fact-finding hearing in accordance with *United States v. Du-Bay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), is appropriate in view of the allegations of unlawful command influence coupled with appellant's averments of direct impairment.

Appellant was one of several sailors tried by court-martial during November and December 1983 on board the USS INDEPENDENCE (CV–62) [hereafter the Ship] for offenses involving the distribution of LSD to members of the Ship's crew. Apparently due to the Ship's operational commitments, a trial team provided by the Naval Legal Service Office, Norfolk, Virginia, was brought in to try the cases at sea. The issue of unlawful command influence

surfaced for the first time in May 1984, when trial defense counsel in the instant case filed an Article 38(c), UCMJ, 10 U.S.C. § 838(c), brief to be attached to the record of trial. Building on the matter contained in this brief, appellant contends on appeal that the improper actions of the staff judge advocate assigned to the Ship constituted unlawful command influence which had an adverse impact on the court-martial proceedings in his case.

The convening authority (Commander of Carrier Group TWO) was embarked on board the Ship with no staff judge advocate personally assigned to him. In order to try these cases at sea, a lieutenant accompanied the trial team to the vessel to act as the convening authority's staff judge advocate. It appears, however, that the Ship's staff judge advocate [hereafter SJA] usurped the functions of the lawyer assigned to the convening authority and acted as the "prime negotiator" for pretrial agreements.

Trial defense counsel avers in pertinent part that: Two weeks before the trial team arrived on board the Ship, the SJA prepared a videotape in which he, the Ship's doctor, and the substance-abuse counselor made a 45–minute presentation informing the crew of the big LSD drug bust that had occurred on the Ship, the potential punishment facing the offenders, and the dangers posed by LSD use on board the Ship. This videotape was shown at least ten times over the Ship's closed circuit television system. All defense counsel were allowed "to view the videotape" and were informed that the SJA had held a meeting "with 42 designated court-martial members during which" he "attempted to 'cleanse' the members of the effects of the videotape." The SJA also informed all defense counsel that "there was concern" about "'illegitimate' motions" being raised concerning "the general propriety of trying the cases on board." Consequently, defense counsel were required to submit a list of motions

1. We also specified review of "whether appellant was denied ... conflict-free counsel." A careful review of the record does not reveal an

actual conflict of interest. *United States v. Devitt,* 20 M.J. 240 (C.M.A. 1985).

they intended to raise before any pretrial agreements would be approved. Trial defense counsel concluded that "the strength of the evidence indicated a need for pretrial agreements," so "I would not place my clients in a position of not having an opportunity to have a pretrial agreement of some kind despite the pressure not to attempt change of venue."

In addition to the affidavit of trial defense counsel, appellant has submitted other documents, including what purports to be a transcript of the videotape. Specific individuals were not named, but the tape conveyed that numerous people had been identified as "users or dealers" of LSD and the investigation was still on-going. Emphasis was placed on the legal and physiological dangers of involvement with LSD, and members of the crew were encouraged to come forward with information to aid in the investigation.

Appellant filed the affidavits of two officers aboard the Ship who testified in extenuation and mitigation in another drug case. These witnesses averred that they were approached by the SJA before they testified and informed of the seriousness of the charges pending against that accused. Both witnesses stated, however, that they testified as planned and were not influenced by the conversations with the SJA.

Also submitted to this Court is the affidavit of appellant, wherein he avers that his defense counsel determined that, due to the repeated broadcasts of the videotape, a fair and unbiased trial by members would be impossible. Based on this advice, he elected trial by military judge alone for sentencing. Appellant also avers that his supervisor had agreed to testify on his behalf but later refused for "personal reasons." Appellant believes that this prospective witness was ordered not to testify. Appellant was told by an officer designated to be a court member that the SJA opined during the briefing to prospective members

that the accused pending trial "were all guilty as hell and what kind of sentences, we were looking at." [2]

In summary, appellant maintains that the spectre of command influence was raised by the SJA's actions in: (1) contacting witnesses prior to trial; (2) appearing on the Ship's television system via videotape to discuss the pending courts-martial; (3) meeting with potential court members before trial; and (4) requiring defense counsel to provide a list of motions they intended to present before any pretrial agreements would be signed. Moreover, appellant contends his own court-martial was directly affected, in that improper command control deprived him of the statutory choice of forum and interfered with his presentation of favorable evidence on sentencing. *Cf. United States v. Rogers*, 21 M.J. 435 (C.M.A. 1986) (in absence of prejudice, appellant entitled to no relief due to military judge's failure to advise of rights); *United States v. Johnson*, 21 M.J. 211, 217 (C.M.A. 1986) (Cox, J., concurring in the result) (court can require showing of prejudice before granting relief for deprivation of statutory right).

This Court regards unlawful "[c]ommand influence" as "the mortal enemy of military justice." *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986). Accordingly, we have been vigilant in enforcing "the Code's objective to protect the court-martial processes from improper command influence." *United States v. Cole*, 17 U.S.C. M.A. 296, 297, 38 C.M.R. 94, 95 (1967). When the Uniform Code of Military Justice was enacted, command control over the court-martial processes was preserved, but restrictions were provided to eradicate misuse of command power, including the prohibition of Article 37, UCMJ, 10 U.S.C. § 837, against unlawfully influencing the action of a court-martial. *See* H.R.Rep. 491, 81st Cong., 1st Sess. 21 (1949). Because of the

---

**2.** Although not submitted in this case, an affidavit of the SJA is contained in the record of trial in a related case, *United States v. Rottinghaus*, Docket No. 51,364, of which we can take judicial notice. Therein, it is stated that the briefing was instructional only and, further, that defense counsel were informed that members could be obtained from the accompanying task force if an impartial panel could not be had from the USS INDEPENDENCE (CV-62).

subtle pressures that can be brought to bear by "command" in military society, we have been willing to review matters outside the record and have refused to consider the issue waived by failure to litigate it at the trial level. *United States v. Blaylock*, 15 M.J. 190, 193 (C.M.A. 1983). *See United States v. Hawthorne*, 7 U.S.C.M.A. 293, 299, 22 C.M.R. 83, 89 (1956); *United States v. Ferguson*, 5 U.S.C.M.A. 68, 17 C.M.R. 68 (1954).

■ We agree with appellant that the SJA's briefing to the crew on the pending courts-martial had the potential for unlawfully influencing the outcome of the trials. A staff judge advocate generally acts with the mantle of command authority. *United States v. McClain*, 22 M.J. 124 (C.M.A. 1986). Due to the numerous showings, the videotape was likely seen by potential members, as well as potential witnesses. Judge Ferguson observed many years ago "that the scales always become loaded against justice when lectures attended by court members involve extended discussion of offenses identical or closely related to those for which an accused is shortly to be tried." *United States v. Olson*, 11 U.S.C. M.A. 286, 289, 29 C.M.R. 102, 105 (1960). *See United States v. Brice*, 19 M.J. 170 (C.M.A. 1985).

■ On the other hand, a primary goal of the convening authority, as pursued by the SJA, appears to be a legitimate one— *i.e.*, that the cases be tried expeditiously on board the Ship. Because most, if not all, of the witnesses were members of the Ship's crew and the Ship was apparently performing critical operational commitments, the situs of trial on board was highly desirable from a command point of view. An expeditious trial on board the Ship could be desirable from the standpoint of an accused as well. Viewed in this light, it would not be impermissible for an accused to waive a motion for a change of venue as part of a pretrial agreement. The Government will usually be protected by the power to withdraw from a plea agreement up until the plea is entered. *Shepardson v. Roberts*, 14 M.J. 354 (C.M.A. 1983). Likewise, an "ade-

quate remedy" for an accused when a pretrial agreement is unavailable or withdrawn is generally "trial on pleas of not guilty." *United States v. Kazena*, 11 M.J. 28, 35 (C.M.A. 1981) (Everett, C.J., concurring in the result).

■ Unfortunately, in this case it is alleged that the SJA tried to coerce counsel into foregoing any motions concerning change of venue in large part to conceal the exercise of unlawful command influence. Certainly, it is against public policy to require an accused to withdraw an issue of unlawful command control in order to obtain a pretrial agreement. *United States v. Corriere*, 20 M.J. 905 (A.C.M.R. 1985). *See* H. Moyer, *Justice and the Military* 715 (1972). Similarly, tactical machinations to achieve the same result will not be tolerated.

■ The matters raised by appellant call into question the fairness of the sentencing proceedings, but are inadequate to resolve the issue. *United States v. Karlson*, 16 M.J. 469 (C.M.A. 1983). Because the allegations are sufficient to warrant further inquiry, we order the disposition requested in accordance with *United States v. DuBay, supra*. If the military judge finds at a limited hearing that unlawful command control was exercised, the military judge should then determine, in accordance with *United States v. Thomas, supra*, whether appellant's sentence was adversely affected by the presence of unlawful command influence.

■ There are no allegations that appellant entered pleas of guilty because of the actions of the SJA. After a full providence inquiry, appellant stated on the record that he believed he was guilty and demonstrated that he was in fact guilty. Trial defense counsel specifically averred that he sought a pretrial agreement because "the strength of the evidence indicated a need for pretrial agreements." For these reasons, we are convinced that appellant is not entitled to relief as to findings, even if his allegations are true.

■ We also granted review of a multiplicity issue. In light of *United States v. Brown*, 19 M.J. 63 (C.M.A. 1984), we conclude that specifications 1 and 3 of Charge II (possession of LSD with intent to distribute) are multiplicious for findings with specifications 2, 4, and 7 (distribution of LSD), but that appellant was not prejudiced as to sentence by this multiplicity.

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to specifications 1 and 3 of Charge II and the sentence; the findings of guilty thereon are set aside; and those specifications are dismissed. In all other respects, the decision below is affirmed as to findings. The record of trial is returned to the Judge Advocate General of the Navy for action in accordance with *United States v. DuBay, supra.* In the event the convening authority to whom the case is referred determines a limited hearing on the issue of unlawful command influence is impracticable, he may order a rehearing on sentence.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.