UNITED STATES

v.

Prisoner Rufus SMITH, 336–66–4446,
United States Air Force.

ACM 28173.

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 Oct. 1989.

Decided 27 June 1991.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni and Captain James C. Sinwell.

Before MURDOCK, O'HAIR and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

MILLS, Judge:

Contrary to his pleas, appellant Smith was found guilty by exceptions and substitutions of larceny and obstruction of justice by a military judge sitting alone as a general court-martial. The approved sentence is confinement for 3 years.

He now asserts that the military judge erred by forcing his trial defense counsel to be a witness against him, resulting in the severing of their attorney-client relationship. Smith asserts an additional error regarding sufficiency of evidence on the larceny charge and invites our attention to four other issues. We find no error and affirm.

## FACTUAL BACKGROUND

Smith had previously been convicted on unrelated charges by general court-martial at RAF Bentwaters, England on 26 February 1988. His approved sentence in that trial was a bad conduct discharge, 21 months confinement, total forfeitures, and reduction to E-1. He was then confined at RAF Lakenheath, England; Mannheim, Germany; and Fort Lewis, Washington. Finally, on 30 January 1989, he was transferred to Lowry Air Force Base, Colorado.

His punitive discharge was executed effective 27 December 1988.

After his arrival at Lowry AFB, three separate inventories of his property were conducted by confinement officials. On 31 January 1989 an Air Force Form 807, Receipt For Prisoner's Personal Property, was completed to list Smith's small items, which included an ID card, dog tags, and a woman's ring with a stone. These items were sealed in an envelope and placed in a safe. On 1 February 1989, an Air Force Form 195, Individual Mandatory Clothing Check, was completed by a staff member when he checked Smith's property. The items listed on this form were clothing items Smith kept with him in his living area. On 3 February 1989 another Air Force Form 807 was completed for Smith's property that was going into storage. Everything Smith had when he arrived at Lowry should have been listed on one of those forms.

Smith was assigned to the Enhanced Minimum Custody Program (EMCP), a program for prisoners who are deemed ready for more privileges. Persons in this program live in a dormitory rather than behind bars at the confinement facility. They are allowed to sign out and go to and from places unescorted.

While he was assigned to EMCP, Smith worked at the security police mobility supply warehouse. His job included weighing, stenciling, and painting mobility equipment boxes, insuring that all the mobility equipment was clean and packed properly, and packing some of the items required for mobility bags. In the course of his duties, Smith had free access to the entire warehouse.

On 9 May 1989, confinement officials conducted a health and welfare inspection of the EMCP dormitory. During the inspection of Smith's room, a number of what appeared to be new items of military property, including security police badges, were discovered in his locker and in a dresser shared with a roommate. The inspectors doubted that Smith, as a prisoner, was entitled to have these items. Two

days later, one of the inspectors reentered Smith's room to get some additional clothing for him because he had been moved from EMCP to the confinement facility. While doing so, he discovered some additional items of military property that he had not seen during the 9 May inspection of Smith's locker.[1]

Smith was later charged with larceny of military property of the United States. The trial on this charge was originally scheduled to begin on 21 July 1989. At that time, Smith was represented by the detailed area defense counsel, Captain P.

On the morning of the scheduled trial, Captain P presented an AF Form 807 to the trial counsel. This form appeared to be an inventory and receipt for property in Smith's custody when he was at the RAF Lakenheath confinement facility on 26 February 1988. The property listed on the form was similar to most of the property alleged in the larceny specification. The defense counsel advised the trial counsel that Smith had recently given her this form and Smith represented that it had been prepared by a named sergeant at the Lakenheath confinement facility.

The trial counsel requested a delay in the trial to investigate this document because he considered it suspect. Subsequently, Smith was charged with the additional offense of obstructing justice because the Air Force Form 807 he presented to his defense counsel was false.

I

Smith contends the military judge erred when he forced the detailed trial defense counsel, Captain P, to become a witness against him, thereby resulting in a sever-

ing of the attorney-client relationship. We disagree.

At an Article 39(a), UCMJ, session on 7 September 1989, Smith was represented by Captain P and by Captain R, individually requested circuit defense counsel. Captain R began representing Smith on 5 September 1989. When the court convened, the government had replaced both the trial counsel and the assistant trial counsel. The defense made a motion in limine to prevent the prosecution from calling Captain P as a government witness. The defense argued that requiring Captain P to testify as a government witness would infringe on the attorney-client privilege under Mil.R.Evid. 502 and violate her ethical obligations as a licensed attorney under the Minnesota Rules of Professional Conduct, as well as the American Bar Association Model Rules of Professional Conduct.[2]

The prosecution acknowledged that they intended to call Captain P as a material witness regarding the additional charge of obstructing justice. The trial counsel stated they also had requested Captain P to produce the Form 807 which she had previously shown to government counsel on 21 July 1989 and allowed them to copy. Trial counsel further argued Smith was attempting to use Mil.R.Evid. 502 as a sword rather than as the shield for which it was intended. Trial counsel contended Smith provided the Form 807 to Captain P on 21 July 1989 to be used as defense evidence in the trial on the larceny charge which was scheduled for that date. Therefore, the government argued, any privilege that might have applied to a confidential communication was waived by the accused.

After receiving evidence and hearing extensive argument by counsel on this issue, the military judge denied the defense mo-

---

1. The record does not suggest this entry into Smith's room on 11 May 1989 was a subterfuge for a search requiring a warrant. In any event, any issue was waived since there was neither a motion to suppress nor any other objection to the evidence. Mil.R.Evid. 103(a), 311(d)(2)(A); R.C.M. 905(e).

2. The defense provided the military judge with a copy of Rules 1.6 Confidentiality of Information, 1.9 Conflict of Interest: Former Client, and 3.7 Lawyer as Witness, of the Minnesota Rules

of Professional Conduct and Rules 1.6 Confidentiality of Information and 1.9 Conflict of Interest: Former Client, of the American Bar Association Model Rules of Professional Conduct. The defense argued that the ethical obligation is much broader than the evidentiary obligation under Mil.R.Evid. 502. In *United States v. Rhea,* 29 M.J. 991 (A.F.C.M.R.1990), we made it clear that military judges have the authority to resolve ethical responsibilities of counsel.

tion. The judge made detailed findings setting forth the bases for his ruling. Captain P then requested she be allowed to withdraw as counsel for Smith because she did not believe she would be an effective counsel and also because of her ethical obligation to withdraw after she was identified as a witness against her client. The military judge granted her request and found that, under the circumstances, good cause had been shown for severing the attorney-client relationship. R.C.M. 506(c).

■ Calling counsel for a litigant as a witness is discouraged; other alternatives to testimony by counsel should be considered. However, it is one thing for us to criticize an undesirable practice, but it is quite another for us to hold it prejudicial error. An attorney is competent to testify as a witness to relevant facts (except those which come from confidential communications with the client) even if called by the opposing party in the trial of a client. *United States v. Babat*, 18 M.J. 316 (C.M.A.1984); *United States v. Buck*, 9 U.S.C.M.A. 290, 26 C.M.R. 70 (1958); *United States v. Marrelli*, 4 U.S.C.M.A. 276, 15 C.M.R. 276 (1954); *United States v. Brown*, 44 C.M.R. 569 (A.F.C.M.R.1971), *pet. denied*, 44 C.M.R. 939 (C.M.A.1971); *United States v. Walbert*, 32 C.M.R. 945 (A.F.B.R.1963), *aff'd*, 14 U.S.C.M.A. 34, 33 C.M.R. 246 (1963). *See also* 81 Am Jur 2d, *Witnesses*, sec. 97 (1976).

■ The attorney-client privilege was one of the first recognized by the law. *See Buck*, 26 C.M.R. at 76; *Marrelli*, 15 C.M.R. at 281. It has long been the general rule that confidential communications between an attorney and client are privileged and cannot be used in evidence against the client. Mil.R.Evid. 502. However, there are circumstances when the privilege does not apply; the lips of the attorney must remain sealed only as to those matters which fall within the purpose and policy underlying the lawyer-client privilege. *See Marrelli*, 15 C.M.R. at 281.

■ For a communication between a client and his attorney to be privileged it must be confidential. If there is a communication to the attorney, with the intention that the matter be passed on to others, privilege does not attach to the communication. *United States v. Winchester*, 12 U.S.C.M.A. 74, 30 C.M.R. 74 (1961); Mil.R.Evid. 502(b)(4) and 510. *See also United States v. Roberts*, 20 M.J. 689 (A.C.M.R.1985); 81 Am Jur 2d, *Witnesses*, sec. 186 (1976).

■ We find the attorney-client privilege did not apply to Smith's production of the Air Force Form 807 and his explanation to his detailed defense counsel about its origin. It is clear that when Smith provided this document and information to Captain P he intended the communication to be passed on and used as evidence in defense of the larceny charge. We find that Smith waived any privilege when he provided this item to his attorney who then advised the trial counsel of its intended use as evidence. *See Winchester* at 78; Mil.R.Evid. 502(b)(4) and 510.

■ There is also no privilege under Mil. R.Evid. 502 if the communication between the attorney and client "clearly contemplated the future commission of a fraud or crime or if services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." Mil.R.Evid. 502(d)(1). A lawyer's skills must not be employed, even without the attorney's knowledge, to further crimes. This was aptly set forth by Justice Cardozo in *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933):

> There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.... To drive the privilege away there must be "something to give colour to the charge;" there must be "prima facie evidence that it has some foundation in fact." (citation omitted) When that evidence is supplied, the seal of secrecy is broken.... Nor does the loss of the privilege depend upon the showing of

a conspiracy, upon proof that client and attorney are involved in equal guilt. The attorney may be innocent, and still the guilty client must let the truth come out. *See also In Re Grand Jury Proceedings,* 680 F.2d 1026 (5th Cir.1982); *United States v. Friedman,* 445 F.2d 1076 (9th Cir.1971); *Marrelli,* 15 C.M.R. at 281, 282.

We also conclude the attorney-client privilege did not attach under Mil.R.Evid. 502 because Smith's production of the form and his explanation of its source to Captain P constituted Smith's use of his lawyer to "commit or plan to commit" what he "knew or reasonably should have known" was a crime or fraud. Mil.R.Evid. 502(d)(1). From the evidence of record, the government established a prima facie case that the form was not authentic when the military judge made his ruling.

Once an attorney-client relationship has been established, absent the express consent of the accused or an application for withdrawal by the defense counsel, it can only be severed for good cause. *United States v. Baca,* 27 M.J. 110 (C.M.A. 1988); *United States v. Eason,* 21 U.S.C. M.A. 335, 45 C.M.R. 109 (1972); *United States v. Littlejohn,* 5 M.J. 637 (A.F.C.M.R. 1978). *See* R.C.M. 505(d)(2)(B)(ii) and 506(c). It is obvious that Captain P's testimony was relevant and material concerning the obstruction of justice charge. Her testimony was presented to the finder of fact as substantive evidence and was not offered to the military judge merely to enable him to make a judicial ruling on a collateral issue. *Baca,* 27 M.J. at 120 (Cox, J., concurring). Unfortunately, it is not clear from the record that any alternatives were attempted to get this evidence before the court by other means. However, it is evident that the obstruction of justice charge was highly contested. There is also no evidence the parties would or could agree to a stipulation. Once the judge ruled that she could be called as a witness, Captain P requested she be allowed to withdraw not only for ethical reasons, but also because she did not feel she would be an effective counsel. We are disturbed that at this stage the military judge failed to obtain any input from the appellant nor did he advise him what precisely was occurring. Smith continued to be represented by Captain R. Based on the facts of this case, and particularly where Captain P affirmatively acknowledged she would not be an effective counsel, we find good cause was shown for the military judge to grant the request by Captain P to withdraw from further representation of the appellant. *See* American Bar Association Model Rules of Professional Conduct Rules 1.16, 3.7 (1983); Air Force Rules of Professional Responsibility Rules 1.16, 3.7 (1989).

As a final observation concerning this assignment of error, we note there is no indication in the record that the appellant suffered any harm because of the loss of Captain P's services. His individual military defense counsel, Captain R, was properly granted a continuance in the trial from 7 September 1989 until 12 October 1989 in order to prepare the case further. Smith's individual defense counsel was obviously well-prepared when the trial resumed and he performed in an excellent manner. Careful consideration of the record convinces us that the appellant was provided effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also United States v. Mansfield,* 24 M.J. 611 (A.F.C.M. R.1987). Considering the trial record as a whole, we conclude the appellant received a fair trial.

II

Smith next claims that the evidence was insufficient to support his conviction of theft. He asserts the government failed to prove anyone had a superior right to ownership of the property allegedly stolen. He further contends the government failed to prove the items in question belonged to the security police mobility supply warehouse where he worked or to the Air Force in general, as charged.

There was no evidence of a shortage from the security police mobility supply warehouse of most of the items that Smith was convicted of stealing. However, there

was direct evidence that the three security police badges came from the warehouse where he worked. These were new badges, with badge numbers of J2452, J2476, and J2445, that had not been issued to anyone. It was also shown that the items found in Smith's room were the same type and kind of military property found in the warehouse, and Smith had ready access to this equipment. Further, it was shown he had the opportunity to remove the items from the warehouse. As a prisoner he was not authorized to possess most of the property. It was also shown by the inventories prepared at Lowry that Smith did not have the property when he arrived. Combining those facts and circumstances with Smith signing and presenting a false AF Form 807 to be used in his defense, the evidence of guilt becomes compelling.

An accused's guilt can be established by circumstantial evidence and the standard of proof in such a case is no higher than that in a direct evidence case. *United States v. Gammill,* 13 M.J. 966 (A.F.C.M.R.1982), *pet. denied,* 14 M.J. 449 (C.M.A.1982). *See also United States v. Ford,* 30 M.J. 871 (A.F.C.M.R.1990); *United States v. Littlehales,* 19 M.J. 512 (A.F.C. M.R.1984), *affirmed,* 22 M.J. 17 (C.M.A. 1986), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986). Of course, in either situation, proof beyond a reasonable doubt is required. The trial judge saw and heard all the evidence presented in this vigorously contested trial. As the trier of fact, he had the discretion to determine the appropriate weight to accord each item of evidence. *United States v. Collier,* 1 M.J. 358 (C.M.A.1976); *United States v. LeCappelain,* 9 M.J. 562 (A.F.C.M.R.1980), *pet. denied,* 9 M.J. 205 (C.M.A.1980). Proof beyond a reasonable doubt does not mean the evidence must be free of conflict. *United States v. Lips,* 22 M.J. 679 (A.F.C. M.R.1986), *pet. denied,* 24 M.J. 45 (C.M.A. 1987). *See also United States v. Ellis,* 2 M.J. 616 (N.C.M.R.1977).

After carefully examining the record of trial, we find the evidence of record to be both legally and factually sufficient to sustain the findings of guilty of larceny of military property. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Cole,* 31 M.J. 270 (C.M.A.1990).

### III

Smith next argues that the court-martial did not have jurisdiction over him because jurisdiction had lapsed. The original larceny charge was preferred and referred on 10 and 13 July 1989, respectively. The original trial date was 21 July 1989. When the trial was delayed to investigate the false Air Force Form 807, the additional charge was preferred on 21 August 1989. In the meantime, Smith's minimum release date had been adjusted to 13 August 1989. Since that date was a Sunday, by regulation Smith would normally have been released from confinement on the preceding duty day, 11 August 1989. Instead, he was placed in pretrial confinement effective 0001 12 August 1989 based on the referred larceny charge and the as yet unpreferred obstruction of justice charge. Smith contends that jurisdiction lapsed during the time he was transferred from confinement to pretrial confinement.

The trial judge made detailed findings and concluded that court-martial jurisdiction attached for both charged offenses before Smith was released from his status as a prisoner serving a sentence to confinement. We agree and find that military jurisdiction remained over the appellant notwithstanding his previously executed discharge. *See Kahn v. Anderson,* 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469 (1921); *Carter v. McClaughry,* 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 (1902); *Ragan v. Cox,* 320 F.2d 815 (10th Cir.1963); *Simcox v. Madigan,* 298 F.2d 742 (9th Cir.1962), *cert. denied,* 370 U.S. 964, 82 S.Ct. 1593, 8 L.Ed.2d 830 (1962); *United States v. Ragan,* 14 U.S.C.M.A. 119, 33 C.M.R. 331 (1963); *United States v. Nelson,* 14 U.S.C. M.A. 93, 33 C.M.R. 305 (1963); *United States v. Harry,* 25 M.J. 513 (A.F.C.M.R. 1987); *United States v. Sylva,* 5 M.J. 753 (A.C.M.R.1978); Article 2(a)(7), UCMJ, 10 U.S.C. § 802(a)(7); R.C.M. 202; *see also Allen v. Steele,* 759 F.2d 1469 (9th Cir. 1985).

## IV

Appellant next contends that there was unlawful command influence or prosecutorial misconduct when the former assistant trial counsel told a witness he should not sign an affidavit for the defense. We note that both the assistant trial counsel and trial counsel, who were detailed to this case on the original larceny charge scheduled for trial in July 1989, were replaced by the time this trial began on 7 September 1989. In the process of preparing for this case, the detailed defense counsel, Captain P, requested a security police investigator to sign an affidavit stating his inability to establish that most of the property listed in the original charge had been stolen or was missing from the government. The investigator contacted the former assistant trial counsel and, based on his advice, declined to sign the affidavit the defense had requested. The investigator had freely talked with the defense counsel before trial and was fully available to testify and provide the same information that was requested in the affidavit. During argument on this motion, trial defense counsel also pointed out that the former assistant trial counsel had authored the pretrial advice on the original charge that was adopted by the staff judge advocate as his own.

The trial judge also made detailed findings on this motion, and concluded the advice given by the former assistant trial counsel was not "unlawful influence" or "prosecutorial misconduct" under the fully disclosed facts of this case. He also ruled that even if the advice did amount to prosecutorial misconduct, the government satisfied the heavy burden of proving the misconduct did not impede the access of the defense to witnesses. We concur and find no prejudicial error. *See United States v. Thomas,* 22 M.J. 388 (C.M.A.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *United States v. Tucker,* 20 M.J. 863 (A.F.C.M.R.1985); *United States v. Rodriguez,* 16 M.J. 740 (A.F.C.M.R.1983). We also agree with the trial judge that the preparation of the pretrial advice on the original larceny charge by the former assistant trial counsel did not render the advice invalid. *See United States v. Hardin,* 7 M.J. 399 (C.M.A.1979); R.C.M. 406.

The remaining invited issues are resolved against the appellant. *See United States v. Sherrod,* 26 M.J. 30 (C.M.A.1988); *United States v. Soriano,* 20 M.J. 337 (C.M.A. 1985); *United States v. Daniels,* 23 M.J. 867 (A.C.M.R.1987); R.C.M. 305(j) and 902.

Having examined the record of trial, the assignments of error, and the government's reply, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge MURDOCK concurs.

Senior Judge O'HAIR did not participate.