UNITED STATES, Appellee

v

ROBERT D. NELSON, Prisoner, U. S. Army, Appellant

14 USCMA 93, 33 CMR 305

No. 16,642

June 21, 1963

*Captain Gary G. Keltner* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod* and *Captain Ronald L. Gainer.*

*First Lieutenant Mervyn Hamburg* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

QUINN, Chief Judge:

The accused challenges the right of the United States Army to try him for a violation of Article 90, Uniform Code of Military Justice, 10 USC § 890.

At the time of the offense, the accused was serving the confinement portion of a prior court-martial sentence, which included a bad-conduct discharge, in the post stockade at Fort Lewis, Washington. The discharge had been approved and executed. On the day of the offense, the accused engaged in a series of aggressive acts which resulted in administrative segregation. A report of his conduct was made to the confinement officer, who had direct responsibility for the "Custody, control, and welfare of the prisoners." The officer proceeded to the accused's cell. As he stood outside the door, he was deluged by water thrown at him by the accused. This act led to the charge of offering violence to a superior officer on which the accused was tried, convicted, and sentenced to confinement for thirteen months.

Article 2(7) of the Uniform Code, 10 USC § 802, provides that persons "in custody of the armed █ forces serving a sentence imposed by a court-martial" are subject to trial by court-martial for offenses under the Code. In 1921, the United States Supreme Court considered the constitutionality of a similar provision in the earlier Articles of War. Kahn v Anderson, 255 US 1, 7, 65 L ed 469, 474, 41 S Ct 224, 225 (1921). Writing for a unanimous court, Mr. Chief Justice White said that notwithstanding the discharge, the petitioners "remained military prisoners . . . [and] for that reason [were] subject to military law and trial by court-martial for offenses committed during such imprisonment." During the past decade, the Supreme Court has held unconstitutional other subdivisions of Article 2, which attempted to subject to court-martial jurisdiction civilian dependents of military personnel and employees of the armed forces serving overseas. Reid v Covert, 354 US 1, 1 L ed 2d 1148, 77 S Ct 1222 (1957); Mc-

Elroy v Guagliardo, 361 US 281, 4 L ed 2d 282, 80 S Ct 305 (1960). However, in the same period the Supreme Court had opportunities to consider the vitality of the Kahn decision but did not tergiversate its conclusion in that case. See Lee v Madigan, 358 US 228, 3 L ed 2d 260, 79 S Ct 276 (1959); Simcox v Madigan, 298 F2d 742 (CA 9th Cir) (1962), cert den, 370 US 964, 8 L ed 2d 830, 82 S Ct 1593 (1962). There are indeed sound reasons for adherence to the Kahn ruling.

Execution of a punitive discharge may, as the accused contends, strike him from active membership in the armed forces and deprive him of the privileges and rights incident to such membership; but the loss of privileges, like the entitlement to them, is not necessarily determinative of amenability to the Uniform Code. See Reid v Covert, 354 US 1, at page 23. More significant is the actual effect of the discharge. In Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1955), the Supreme Court held that military jurisdiction was ended by the absolute discharge of a serviceman and his return to the civilian community.

A prisoner serving the confinement part of his sentence in a military prison under a discharge executed as part of the same sentence is not in the position of Toth. He is not part of the civilian community and has not "severed all relationship with the military and its institutions." Id. at page 14. The effect of his discharge is expressly conditioned by, and subject to, the provisions of Article 2(7) of the Uniform Code. Cf. Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949); United States v Noble, 13 USCMA 413, 32 CMR 413. Retention of military control over a prisoner does not represent a "new expansion" of jurisdiction, which, in Toth, Reid, and related cases, the Supreme Court believed was incompatible with the constitutional principle of limiting military jurisdiction to whatever was essential to effectuate its military mission. On the contrary, the doctrine has received legislative and judicial sanction for almost a century.

**94**

17 Stat 584 (1873); Ex parte Wildman, 29 Fed Case No. 17,653a (1876), cited with approval in the *Kahn* case. Military jurisdiction under these circumstances does not bring civilians under military control. It merely continues existing military jurisdiction; and it has as one of its principal objectives the "honorable restoration to duty or reenlistment" of convicted military prisoners through a program of military training. 10 USC §§ 3661(b)(2), 3663, and 8662. Under Article 2(7), therefore, the accused remained subject to the Uniform Code, notwithstanding execution of the punitive discharge part of his court-martial sentence.

Turning to the offense, appellate defense counsel contend that as a discharged prisoner the accused is a civilian and, therefore, there is no relationship of rank or command between him and the confinement officer. In the absence of such a relationship, the defense argument runs, the confinement officer is not the "superior commissioned officer" of the accused, within the meaning of Article 90 of the Uniform Code, 10 USC § 890. In McDonald v Lee, 217 F2d 619 (CA 5th Cir) (1954), a military prisoner, who had been given the dishonorable discharge imposed upon him as part of the sentence of a court-martial, was tried and convicted of disrespect toward a superior officer, and offering violence to a superior officer, in violation of Articles 89 and 90 of the Uniform Code, 10 USC §§ 889 and 890, respectively. The Court of Appeals commented on the constitutionality of Congressional continuation of court-martial jurisdiction over military prisoners in custody of the armed forces, but made no reference to the nature of the offense. Apparently it was assumed that a sufficient relationship of superior-subordinate existed between a prisoner and the confinement officials to justify prosecution under Articles 89 and 90. See also United States v Courtwright, 13 USCMA 322, 32 CMR 322; United States v Ragan, 10 CMR 725, petition denied, 3 USCMA 824, 11 CMR 248; Ex parte Gerlach, 247 Fed 616 (SD NY) (1917). The assumption is supported in law and logic.

The Uniform Code defines a "'Superior commissioned officer'" as one who is "superior in rank or command" to another. Article 1(5), 10 USC § 801. Rank refers to the "order of precedence among members of the armed forces." 10 USC § 101(19); see also 10 USC §§ 741, 742, 3579, 3581, and 3582. Assuming, without deciding, there is no relationship of rank between a discharged prisoner and the confinement authorities, there is definitely a "command" relationship between them. The authority of command does not, as defense counsel contend, import a normal military relationship. We are not referred to any statute by which Congress limited the meaning of the word to such a relationship, and we are not aware of any statute to that effect. The original pattern of the Uniform Code indicates that Congress intended the word "command" be given its ordinary, dictionary meaning of authority to exercise control over the conduct and duties of another. Dependents of military personnel, employees and other civilians were, under certain conditions, subject to the Uniform Code. They were not, however, subject to every offense defined in the Code. Only a "member of the armed forces" can commit certain offenses. See Articles 85, 86, and 99 of the Uniform Code, 10 USC §§ 885, 886, and 889, respectively; cf. United States v King, 11 USCMA 19, 28 CMR 243. Other offenses can be committed only by specified persons, such as officers or those carrying out special functions. See Articles 37, 88, 91, and 113, Code, supra, 10 USC §§ 837, 888, 891, and 913, respectively. Article 90 is one of the Articles of the Code that can be violated by "Any person subject to" the Code. Since Congress knew that many persons subject to the Uniform Code had no military rank, it must have contemplated that all such persons would be liable for misconduct in violation of the Article, on the basis of superiority of command. If it did not so intend, the offense would be applicable only to persons who are actually and actively members of the armed forces. Under this interpretation the class of persons subject to the Article is much smaller than indicated by the scope of the language used. The inconsistency

argues strongly against a narrow construction of the Article, and, in our opinion, would circumvent the intent of Congress. See United States v Dickenson, 6 USCMA 438, 20 CMR 154; United States v Hicks, 6 USCMA 621, 20 CMR 337. True, since enactment of the Uniform Code, the Supreme Court has held that civilians are not subject to trial by court-martial under its provisions, but the Supreme Court's decisions have not changed the original intent of Congress in regard to the operative scope of Article 90. We conclude that a commissioned officer vested with authority to direct and control the conduct and duties of a person subject to the Code is the latter's "superior commissioned officer" within the meaning of Article 90. See Hamilton v United States, 268 Fed 15, 19 (CA 4th Cir) (1920). Since the accused, as a military prisoner in custody of the armed forces, is subject to the Uniform Code, he is liable under Article 90 for offering violence to the stockade commander.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (concurring):

I concur.

Were it not for the decision of the Supreme Court in Kahn v Anderson, 255 US 1, 65 L ed 469, 41 S Ct 224 (1921), I would entertain grave doubts concerning my brothers' resolution of the issues before us. That case, however, stands unmodified and unimpeached by later authority. As such, it governs the questions before us, and I join in affirming the decision of the board of review.