UNITED STATES, Appellee

v

JACK V. K. RAGAN, Sentenced Prisoner,
U. S. Air Force, Appellant

14 USCMA 119, 33 CMR 331

No. 16,607

July 5, 1963

*Major William A. Crawford, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major James Taylor, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

For most of the past eighteen years, the accused has been in a military or civilian prison. He has also been in the courts on various applications for relief in connection with his confinement. Blackwell v Ragan, 303 F2d 103 (CA 9th Cir) (1962); Ragan v Cox, Civil Nos. 3230 and 3236 (DC Kan), October 17, 1962. The present appeal is from a conviction by general court-martial for assault on a fellow prisoner in the United States Disciplinary Barracks, in violation of Article 128, and two specifications of misconduct, in violation of Article 134, Uniform Code of Military Justice, 10 USC §§ 928 and 934, for which he was sentenced to confinement at hard labor for five years.

The initial assignment of error deals with the jurisdiction of the military to try the accused. The argument has two parts. Principally, it is contended the accused was not subject to the Code because long before the commission of the instant offenses and the trial, he received a dishonorable discharge. The discharge was part of the first court-martial sentence which resulted in the accused's incarceration. The same point was raised in United States v Nelson, 14 USCMA 93, 33 CMR 305, and the two cases were argued at this term of Court. Our opinion in the

*Nelson* case sets out the reasons which led us to conclude that ▮ Article 2(7) of the Code, 10 USC § 802, which retains court-martial jurisdiction over persons "in custody of the armed forces serving a sentence imposed by a court-martial," is a constitutional exercise of the power of Congress to make rules and regulations for the government of the armed forces. Secondarily, conceding amenability to the Uniform Code during confinement in a military prison, the accused contends such jurisdiction was lost when he was transferred to a Federal penitentiary under the supervision of the Department of Justice.

In 1944, the accused was sentenced by a general court-martial to dishonorable discharge, total forfeitures, and confinement at hard labor for six years. The discharge was suspended, but when the accused escaped from confinement, the suspension was vacated and the discharge was duly executed. The accused was transferred to, and confined in, a disciplinary barracks. Shortly thereafter he again escaped. He remained beyond military control for about eight years; most of this time, however, he was confined by state authorities. On his return to military control in February 1952, he was confined in the United States Disciplinary Barracks at Fort Leavenworth to serve out the remaining period of confinement prescribed by his 1944 court-martial sentence. About six months later, the accused again came before a general court-martial. There were numerous charges, including assault with intent to murder and mutiny. He was convicted and sentenced to twelve years' confinement. The board of review modified the findings of guilty and reduced the sentence to ten years. As authorized by Article 58 of the Uniform Code, 10 USC § 858, the order of execution directed that the confinement under the sentence be served in the United States Penitentiary, McNeil Island, Washington. Later, the accused was transferred from McNeil Island to the Federal Prison at Alcatraz.[1]

While in confinement in the civil prison, the accused earned "good time." The amount thereof was disputed. Military regulations allowed military prisoners more good time than was allowed civilian prisoners under applicable Federal statutes. When the accused had accumulated sufficient good time, according to the military rate, to be eligible for release from confinement under his last sentence, he petitioned the United States District Court for a writ of habeas corpus. The court sustained the contention that as a military prisoner he was entitled to earn good time and to be released according to the military regulations. The ruling was affirmed by the Court of Appeals for the Ninth Circuit. Blackwell v Ragan, supra. As a result, the accused was transferred to the United States Disciplinary Barracks at Fort Leavenworth to serve the unexpired portion of his original sentence. The present offenses were committed a few months after his arrival at the Disciplinary Barracks.

The accused's contention that his incarceration in a Federal prison irrevocably terminated his liability to trial by court-martial is inconsistent with his earlier insistence in the Federal court proceeding that he was entitled to the military rate of good time rather than the rate applied to regular prisoners. We need not, however, consider the effect of the inconsistency. Neither need we consider whether the ruling in the *Blackwell* case is inconsistent with the direction of Congress in Article 58 of the Uniform Code, that military prisoners "confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United

---

[1] Confinement under the second sentence interrupted service of the confinement under the original sentence. See AR 600–340, May 22, 1951, superseded by AR 633–30, paragraph 4, September 27, 1955; United States v Bryant, 12 USCMA 133, 30 CMR 133; Edwards v Madigan, 281 F2d 73 (CA 9th Cir) (1960).

States." Cf. In re Naples, 142 Fed 781 (ND Ohio) (1905); Randolph v Donaldson, 9 Cranch 76 (U. S. 1815). We are certain Congress knew that prisoners are subject to transfer from one prison to another, as circumstances may warrant. See 18 USC § 4082; In re Berman, 80 F2d 361 (CA 7th Cir) (1935), cert den, 298 US 660, 80 L ed 1386, 56 S Ct 682 (1936). The provisions of Article 58 indicate ▬▬▬▬ ■ Congress specifically contemplated that military prisoners might, in the interest of the Government or the prisoner, be transferred to a penal institution not under the control of the armed forces. We noted above that Congress can constitutionally subject a military prisoner to the provisions of the Code. Congress chose to limit jurisdiction to such times as the prisoner was actually "in the custody of the armed forces." The offenses here were committed while the accused was in such custody; and the accused was tried while in such custody. Consequently, both constitutional and statutory conditions for court-martial jurisdiction were satisfied. See United States v Gallagher, 7 USCMA 506, 22 CMR 296. We conclude, therefore, that the period of confinement served by the accused in a Federal civilian penitentiary as a military prisoner did not preclude the exercise of military jurisdiction over him upon his return to military custody. See Reid v Covert, 351 US 487, 100 L ed 1352, 76 S Ct 880 (1956), overruled on other grounds, 354 US 1, 1 L ed 2d 1148, 77 S Ct 1222 (1957).

Moving to another aspect of jurisdiction, the accused contends that as a discharged prisoner he is not subject to trial for one of the offenses of which he was convicted. Specification 1 of Charge II alleges that in violation of Article 134 of the Code, the accused, in conjunction with other prisoners, assaulted Specialist Four Iain W. Barclay, who was in the execution of military police duties. This Court has pointed out the differences between the three parts of Article 134, which deal, respectively, with disorders and neglects to the prejudice of good order and discipline; conduct of a nature to bring discredit upon the military services; and crimes and offenses not capital. See United States v Frantz, 2 USCMA 161, 7 CMR 37; United States v Herndon, 1 USCMA 461, 4 CMR 53. Misconduct in violation of Article 134 occurring "in the semi-privacy of a military reservation" is generally prosecutable under the first classification. United States v Snyder, 1 USCMA 423, 425, 4 CMR 15. The essence of accused's argument is that only an active member of the military service can engage in conduct to the prejudice of good order and discipline. The language of the Article argues against this limited construction of the disorder clause. Persons subject to the Code are subject to the provisions of all three categories of offenses delineated in Article 134. In the quarter of a century immediately preceding the United States Supreme Court's invalidation of the Congressional effort to subject certain civilians to court-martial jurisdiction, military appellate tribunals consistently upheld the conviction of civilians subject to military law for acts to the prejudice of good order and discipline. See United States v Carter, 4 CMR (AF) 172, and cases cited.

The fallacy in the appellant's argument is that some conduct to the prejudice of good order and discipline does not depend ▬▬▬▬ ■ upon the existence of a military relationship between the actor and the armed services. What is important is the effect of the act upon the service. If the accused's conduct has a direct and palpable prejudicial impact upon good order and discipline, it constitutes a violation of Article 134. For example, a public statement designed to promote disaffection among the troops operates to the prejudice of good order and impairs discipline, whether it is made by a general prisoner whose discharge has been executed or by an active member of the armed forces. Similarly, misprision of a felony adversely affects good order and discipline, whether committed by a general prisoner or a member of the armed forces. It may be that certain acts of misconduct in violation of the

122

disorder and neglect clause of Article 134 are punishable only when committed by a person on active duty in the armed forces, but the instant offense is not one of them. We conclude that a discharged prisoner confined in a military prison under sentence of court-martial can engage in conduct to the prejudice of good order and discipline in violation of Article 134.

The next question relating to the assault specification is whether the offense is chargeable as a violation of Article 128 or Article 134. Assault upon a person engaged in the execution of military police duties carries a greater punishment than the offense of assault and battery in violation of Article 128. See Manual for Courts-Martial, United States, 1951, paragraph 127c, Table of Maximum Punishments, page 224. In a number of cases we have at least impliedly recognized that Congress did not intend to limit to Article 128 all prosecutions for assault and battery. United States v McCormick, 12 USCMA 26, 30 CMR 26; see also United States v Lawrence, 8 USCMA 732, 25 CMR 236. Whether we should now make explicit that which we previously treated as implicit, need not detain us. The Uniform Code empowers the President to prescribe the maximum limits of punishment. He may properly provide greater punishment for misconduct aggravated by special circumstances; for example, desertion terminated by apprehension or larceny of property of a specified value. Allegation and proof of specific aggravating circumstances justify the imposition of a greater punishment for a particular offense. United States v Grossman, 2 USCMA 406, 9 CMR 36; United States v Nickaboine, 3 USCMA 152, 11 CMR 152. Here, the allegations and the proof show the victim was in the execution of police duties at the time of the assault. As a result, the greater punishment provision is applicable, whether the offense is laid under Article 128 or Article 134. See

United States v Underwood, 10 USCMA 413, 27 CMR 487. There is, therefore, no possibility of prejudice to the accused by reason of the charge under which the specification was laid.[2]

Finally, the accused alleges error in the prosecution of the Additional Charge and its specification. This specification charges a violation of 18 USC § 1792, in that the accused, without the knowledge or consent of the commandant of the disciplinary barracks, concealed weapons within the barracks. The assignment of error was presented to, and extensively considered by, the board of review. It held that the record of the proceedings below showed the staff judge advocate failed to supply the convening authority with a written and signed pretrial advice. And it determined the omission was error but concluded the accused "waived this defect . . . by his failure to object at trial." The ruling is supported by the Manual and a long line of our cases.

The Manual for Courts-Martial provides that if the accused objects to the pretrial advice, he must move for appropriate relief before entering his plea, or he waives the purported defect. Manual for Courts-Martial, United States, 1951, paragraph 69c; United States v Heaney, 9 USCMA 6, 25 CMR 268; United States v Mickel, 9 USCMA 324, 26 CMR 104. Appellate defense counsel acknowledge the Manual provision and our cases, but insist that neither is applicable to what they describe as a "total failure of compliance with the mandate" of Article 34(a) of the Uniform Code, 10 USC § 834. The Article provides as follows:

"Before directing the trial of any charge by general court-martial, the convening authority shall refer it to his staff judge advocate or legal officer for consideration and advice. The convening authority may not refer a charge to a general court-martial for trial unless he has found that the charge alleges an offense under

[2] In view of our conclusion, we need not consider whether the specification sufficiently alleges a violation of Article 134 of the Uniform Code, under the other crimes and offenses clause, by pleading facts showing a violation of 18 USC § 111.

this chapter and is warranted by evidence indicated in the report of investigation."

We need not inquire whether, contrary to the conclusion of the board of review, the staff judge advocate's advice in fact includes reference to the Additional Charge. Instead, we may assume the board of review correctly interpreted the staff judge advocate's reference to " 'the charge sheet and allied papers together with a report of the investigating officer' " as meaning only the original charges.[3] Cf. United States v Brown, 13 USCMA 11, 32 CMR 11. The Additional Charge was before the court-martial by reference of the convening authority, and there is absolutely no evidence to impugn the validity of the reference. See United States v Roberts, 7 USCMA 322, 22 CMR 112; cf. United States v Schuller, 5 USCMA 101, 17 CMR 101. The question then is whether the failure to accord the accused the right to a pretrial advice deprives the court-martial of the power to proceed with trial of the investigated charges. In our opinion, it does not.

The backbone of the pretrial advice is the evidence against the accused. United States v Greenwalt, 6 USCMA 569, 20 CMR 285. In the case of a general court-martial, that evidence must be provided in the Article 32 investigation. Congress has expressly said the failure to hold an Article 32 investigation "does not constitute jurisdictional error." See United States v Allen, 5 USCMA 626, 18 CMR 250; United States v McCormick, 3 USCMA 361, 12 CMR 117; United States v Mickel, 9 USCMA 324, 26 CMR 104. We are not persuaded by anything presented in the accused's brief, or by our review of the background and operation of the Uniform Code, that the pretrial advice should be elevated to a more sanctified position in the preliminary proceedings than the Article 32 investigation. From whatever standpoint we approach it, the advice is unalterably a preliminary requirement. A defect in the preliminary proceedings is substantially different from a defect in the trial proceedings. We pointed out the significance of the difference in the *Mickel* case, at page 327:

"With the possible exception of the sufficiency of the evidence to support the charges, the pretrial proceedings, including the formal investigation under Article 32, are separate from the trial. Article 34, Uniform Code of Military Justice, 10 USC § 834; cf. Costello v United States, 350 US 359, 76 S Ct 406, 100 L ed 397 (1956). Of course, this is not to say that they are unimportant. The Uniform Code says otherwise, and we have often held to the contrary. See United States v Schuller, 5 USCMA 101, 17 CMR 101; United States v Parker, 6 USCMA 75, 19 CMR 201. Thus, if an accused is deprived of a substantial pretrial right on timely objection, he is entitled to judicial enforcement of his right, without regard to whether such enforcement will benefit him at the trial. At that stage of the proceedings, he is perhaps the best judge of the benefits he can obtain from the pretrial right. Once the case comes to trial on the merits, the pretrial proceedings are superseded by the procedures at the trial; the rights accorded to the accused in the pretrial stage merge into his rights at trial. If there is no timely objection to the pretrial proceedings or no indication that these proceedings adversely affected the accused's rights at the trial, there is no good reason in law or logic to set aside his conviction.

"The law demands that an accused, who is aware of error in preliminary procedures, make timely objection to preserve his rights. From one who is not aware of the error until after

---

[3] The Article 32 investigating officer investigated the original charges and the additional charge at the same time and submitted a single report covering both. During the preliminary hearing, the accused was represented by the same civilian and appointed military counsel that represented him at the trial. The charges and investigating officer's report were submitted to the staff judge advocate at the same time.

trial, we can expect no less than a showing that the pretrial error prejudiced him at the trial."

The record of the proceedings shows no possible risk of prejudice from the purported deficiency in the pretrial advice. At trial, defense counsel made several motions regarding the Additional Charge. The arguments on these motions indicate a thorough knowledge of the law and the evidence relating to this Charge. There is, therefore, no reason apparent in the record to justify reversal of the accused's conviction of this offense.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.