**UNITED STATES, Appellee,**

v.

**Sergeant John W. HENDERSON, 252–21–7080, United States Army, Appellant.**

**ACMR 8600106.**

U.S. Army Court of Military Review.

27 Feb. 1987.

For Appellant: Major Joel D. Miller, JAGC, Major Jerry W. Peace, JAGC, Captain Alfred H. Novotne, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC, Captain Cynthia M. Brandon, JAGC (on brief).

Before O'ROARK, RABY and CARMICHAEL, Appellate Military Judges.

OPINION OF THE COURT

PER CURIAM:

Appellant was convicted of fifteen specifications of dishonorably failing to maintain sufficient funds in his checking account, thirteen specifications of wrongfully uttering worthless checks, and of making a false statement under oath in violation of Articles 134 and 123a, Uniform Code of Military Justice [hereinafter cited as

UCMJ], 10 U.S.C. §§ 934 and 923a (1982).[1] He received and the convening authority approved a sentence to a bad-conduct discharge, forfeiture of all pay and allowances and reduction to the grade of Private E–1. This sentence was less severe than the terms of appellant's negotiated guilty plea.[2]

■ Appellant asserts that the court-martial lacked subject matter jurisdiction over Specifications 22 through 28 of Charge I (uttering worthless checks off-post). We disagree. Whether an offense is "service connected" depends primarily on the facts of the particular case, and in major part this determination is grounded on the impact which the offense has on military discipline and effectiveness; whether the military interest in determining the offense is distinct from and greater than that of civilian society; and on whether the distinct military interest can be vindicated adequately in civilian courts. *See generally Schlesinger v. Councilman,* 420 U.S. 738, 759–760, 95 S.Ct. 1300, 1313–1314, 43 L.Ed.2d 591 (1975); *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). Of course, "the criteria for service connection should be reexamined periodically in light of changes in the conditions under which the Armed Services perform their assigned missions and the accompanying changes in impact of off-post crimes upon their ability to accomplish those missions." *United States v. Lockwood,* 15 M.J. 1, 10 (C.M.A.1983). Nevertheless,

*"O'Callahan's* primary concern is with the impact of crimes on the armed services and their missions. Unless there is such impact, no reason exists not to allow a servicemember the right to a jury trial and grand-jury indictment[3] which he generally would enjoy if tried in a civilian court." *United States v. Solorio,* 21 M.J. 251 (C.M.A.1986), *cert. granted,* —— U.S. ——, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986) (footnote added).

■ After applying the criteria and legal principles found in the above cited precedents to all the relevant facts of this case, we are satisfied that the court-martial had subject-matter jurisdiction over Specifications 22 through 28 of Charge I. Among those facts which we find particularly significant are the following:

a. The appellant was a noncommissioned officer on active duty in the United States Army.

b. He was charged with twenty-eight separate bad check specifications.

c. He made and uttered these checks in a series of criminal actions over a period in excess of four months.

d. Of the bad checks made and uttered, only seven in question were uttered off-post. All other averred bad checks were uttered on a military installation.

e. The bank in question is located approximately one mile from the Fort Bliss military installation and does a substantial amount of business with soldiers assigned to Fort Bliss.[4]

1. The thirteen specifications of wrongfully uttering worthless checks were in violation of Article 123a; the remaining offenses violated Article 134.

2. Appellant pled guilty in return for, in part, the convening authority's promise not to approve any adjudged confinement in excess of "six months if restitution is made prior to trial" or "nine months if restitution is not made prior to trial."

3. It is our view that the grand-jury indictment right pales in practical significance in comparison to a servicemember's pretrial investigation rights under Article 32, UCMJ, 10 U.S.C. § 832. This is especially true when those latter rights

are coupled with the statutory conditions under Article 34(a), UCMJ, 10 U.S.C. § 834(a), which must be present before a convening authority can refer a case to trial by general court-martial.

4. Our years of military service have made us well-aware of the adverse impact which the general bad credit reputation of a large unit can have on the morale, discipline and effectiveness of the members of that unit, especially on the young enlisted soldiers thereof. While officers normally can get their checks cashed under most circumstances by presenting proper identification, young enlisted soldiers and their spouses can suffer severely when a unit obtains a

f. The appellant had printed his current military address on the face of each check in question. (Obviously, therefore, his military connection assisted him in cashing the checks off-post and we find this to be a fact.)

g. The victim bank filed a claim under Article 139, UCMJ, on 13 February 1986, shortly after appellant's criminal uttering of bad checks ceased.[5]

Appellant's assignment of jurisdictional error is without merit.

■ Appellant further asserts that a record of nonjudicial punishment was erroneously admitted in evidence during the presentencing procedure, as that record was not properly maintained in appellant's personnel records in the manner prescribed by Army Regulation 27–10, Legal Services: Military Justice, para. 3–37c(2) (10 Dec. 1985).[6] We agree and will reassess the sentence.

We also have considered the error personally alleged by appellant and find it to be without merit.

The findings of guilty are affirmed.

Reassessing the sentence on the basis of the error noted and the entire record, the sentence is determined to be appropriate and is affirmed. *See United States v. Hendon,* 6 M.J. 171, 175, (C.M.A.1979).

---

reputation for bad credit in a community. This problem has become more severe in recent years as the Army has moved from the pay lines of old to modern-day computer-assisted check-to-bank options. A young soldier and his dependents now can find themselves under serious financial and emotional stress if the local communities refuse to cash their checks.

5. A meritorious claim normally results in a damage assessment against the responsible soldier and a charge against his pay. This time-consuming claims procedure tasks military administrative command and staff resources. Moreover, as stated in *Lockwood,* "[a]n offense committed by a servicemember tends to injure relationships between the military community and the civilian community and thereby makes it more difficult for servicemembers to receive needed local support." *United States v. Lockwood,* 15 M.J. at 9. The filing of the Article 139, 10 U.S.C. § 939 claim is but a manifestation of this fact.

6. The record of nonjudicial punishment in question, which had been directed for filing on the restricted fiche, erroneously had been maintained in appellant's Military Personnel Records Jacket (MPRJ) rather than in the unit personnel files.