UNITED STATES, Appellant,

v.

Frederick MURRAY, Private U.S. Army, Appellee.

No. 55,499.
CM 447738.

U.S. Court of Military Appeals.

March 14, 1988.

For the United States: *Lieutenant Colonel Gary F. Roberson* (argued); *Colonel Norman G. Cooper, Major Richard A. Gallivan, Captain Samuel J. Rob* (on brief).

For the accused: *Captain John J. Ryan* (argued); *Colonel Brooks B. La Grua, Major Marion E. Winter, Major Jerry W. Peace* (on brief); *Colonel John T. Edwards* and *Captain Alfred H. Novotne.*

OPINION OF THE COURT

COX, Judge:

The accused was tried by general court-martial convened at Wiesbaden, Federal Republic of Germany, by a military judge sitting alone. In accordance with his pleas, he was convicted of obstruction of justice and bribery, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to confinement for 6 months, total forfeitures, and a bad-conduct discharge. In accordance with a pretrial agreement, the convening authority approved the sentence except for forfeitures in excess of $413.00 pay per month for 6 months. The Court of Military Review set aside the findings and sentence, and authorized a rehearing. 22 M.J. 700 (1986).

The Judge Advocate General of the Army then certified the following issue to this Court for review:

> WHETHER THE DECISION OF THE ARMY COURT OF MILITARY REVIEW, THAT FAILURE TO PROVIDE A WRITTEN PRETRIAL ADVICE TO A CONVENING AUTHORITY IN A GENERAL COURT–MARTIAL IS IN EFFECT *PER SE* PREJUDICIAL ERROR REQUIRING REVERSAL, IS CORRECT IN VIEW OF ARTICLE 59(a).

The charges against the accused were preferred by his commander on May 14, 1985. In his transmittal letter dated May 15, 1985, accompanying the charges, the commander recommended that the accused be tried by general court-martial. The summary court-martial (SCM) convening authority forwarded the charges on May 16, 1985, recommending trial by general court-martial. The special court-martial (SPCM) convening authority appointed an Article 32[1] investigating officer, who held an inquiry on June 14, 1985. In his report of June 19, 1985, the investigating officer recommended trial by special court-martial. The SPCM convening authority, after reviewing the report of investigation, forwarded the charges and the investigation to the general court-martial (GCM) convening authority recommending trial by general court-martial.

It was at this stage of the case that the error which led to the decision now challenged in the certified issue was committed. There is no evidence in the record that the convening authority was ever provided the written pretrial advice from his staff judge advocate, as required by Article 34, UCMJ, 10 U.S.C. § 834. The charges and all the allied papers—minus the pretrial advice—were forwarded to defense counsel, and a trial date was set. No motion was made by the defense regarding the missing pretrial advice before pleas were entered. Murray had negotiated a pretrial agreement[2] and, accordingly, entered pleas of guilty. His pleas were accepted, and he was sentenced by the judge.

Defense counsel was presented with the record of trial along with the staff judge advocate's post-trial recommendation. Pursuant to R.C.M. 1106(f), Manual for Courts-Martial, United States, 1984, counsel submitted his response to the convening authority; again he made no mention of the lack of the pretrial advice. On September 18, 1985, in accordance with the pretrial agreement, the convening authority approved the sentence. The matter of the "missing" pretrial advice was not raised until the case reached the Court of Military Review.

The Court of Military Review determined that the lack of the pretrial advice deprived the court-martial of the power to proceed to trial on the investigated charges, holding that the absence of the document was *per se* prejudicial and required automatic reversal. 22 M.J. at 703. To reach this conclusion, the court reviewed the legislative history of Article 34 and concluded that changes to the article implemented by the Military Justice Act of 1983,[3] given their logical meaning, demonstrated a congressional desire to impose stricter standards for pretrial advices than those that previously existed and that stricter sanctions should apply to errors of this type, *i.e.,* automatic reversal. *Id.* at 702–03. In so doing, the court decided that a showing of actual prejudice or the harmless-error standard[4] as set out in *United States v. Ragan,* 14 U.S.C.M.A. 119, 33 C.M.R. 331 (1963), no longer applied.

After careful consideration of this issue, we must emphasize that we do not entirely disagree with the Court of Military Review's decision. We do agree that:

(1) It is error not to submit the charges to the staff judge advocate in order for him to render, in writing, a pretrial advice;

---

1. Uniform Code of Military Justice, 10 U.S.C. § 832 (1983).

2. R.C.M. 705, Manual for Courts-Martial, United States, 1984.

3. Pub.L.No. 98–209, § 4, 97 Stat. 1393, 1395 (1983).

4. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

(2) Failure to obtain the pretrial advice can be prejudicial to an accused; and,

(3) Such an error is not jurisdictional in nature.

However, to the extent that the Court of Military Review determined the omission was *per se* prejudicial error, we conclude that the decision below that "the failure of the convening authority to receive a pretrial advice deprives a court-martial of the power to proceed with trial on investigated charges.... [and] is prejudicial error requiring reversal," 22 M.J. at 701, 703, was incorrect and must be overruled.

Our careful review of Article 59, the legislative history pertinent thereto, the various Rules for Courts-Martial issued to implement the Article, and case law involving similar questions requires us to hold that an error such as the one before us now requires reversal only when the accused has suffered actual prejudice. Art. 59(a), UCMJ, 10 U.S.C. § 859(a). *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Weeks*, 20 M.J. 22 (C.M.A. 1985); *United States v. Remai*, 19 M.J. 229 (C.M.A. 1985); and *United States v. Ragan, supra.*

*Ragan* dealt with a similar issue. The convening authority referred additional charges to a general court-martial without first submitting them to a legal advisor for review and comment. There, we would not, as did the court below here, elevate the Article 34 advice "to a more sanctified position in the preliminary proceedings than the Article 32 investigation." 14 U.S.C. M.A. at 124, 33 C.M.R. at 336. We stated:

> From whatever standpoint we approach it, the advice is unalterably a preliminary requirement. A defect in the preliminary proceedings is substantially different from a defect in the trial proceedings. We pointed out the significance of the difference in the *Mickel* [*United States v. Mickel*, 9 U.S.C.M.A. 324, 327, 26 C.M.R. 104, 107 (1958)] case ... [as follows]:
>
> "With the possible exception of the sufficiency of the evidence to support

the charges, the pretrial proceedings, including the formal investigation under Article 32, are separate from the trial. [Citations omitted.] Of course, this is not to say that they are unimportant. The Uniform Code says otherwise, and we have often held to the contrary. [Citations omitted.] Thus if an accused is deprived of a substantial pretrial right on timely objection, he is entitled to judicial enforcement of his right, without regard to whether such enforcement will benefit him at the trial. At that stage of the proceedings, he is perhaps the best judge of the benefits he can obtain from the pretrial right. Once the case comes to trial on the merits, the pretrial proceedings are superseded by the procedures at the trial; the rights accorded to the accused in the pretrial stage merge into his rights at trial. If there is no timely objection to the pretrial proceedings or no indication that these proceedings adversely affected the accused's rights at the trial, there is no good reason in law or logic to set aside his conviction.

"The law demands that an accused, who is aware of error in the preliminary procedures, make timely objection to preserve his rights. From one who is not aware of the error until after trial, we can expect no less than a showing that the pretrial error prejudiced him at the trial."

14 U.S.C.M.A. at 124–25, 33 C.M.R. at 336–37.

It is important to compare Article 34 as it existed when this Court's decision in *Ragan* was released in 1963 and as it exists today, since its revision under the Military Justice Act of 1983. From 1963 to 1983, Article 34 basically remained the same. It provided that the convening authority, before referring charges to a general court-martial, must consult with his staff judge advocate for coordination "and advice." Also, the convening authority was not to "refer" charges until he determined that they stated "an offense under" the Code

and were "warranted by evidence." As amended in 1983, Article 34 has shifted the burden of legal analysis of the circumstances from the convening authority to his staff judge advocate by requiring that, "[b]efore directing the trial of any charge by general court-martial, the convening authority shall" first "refer it to his staff judge advocate for consideration and advice." The convening authority "may not refer" the "charge to a general court-martial for trial unless" the staff judge advocate has stated, "in writing," that after reviewing the matter, he has concluded court-martial jurisdiction does exists "over the accused and the offense"; the charge "alleges an offense"; and the charge "is warranted by the evidence." While the form for providing pretrial advice and making legal determinations under Article 34 has changed, we note that the two—before and after—are essentially the same: Both require pretrial consultation and a determination of legal sufficiency as a precondition to referral.

■ We find nothing in the legislative history of the Military Justice Act of 1983 to indicate that Congress intended harsher sanctions for violating Article 34 than those prescribed in *Ragan*. The section-by-section [5] analysis of the then-proposed act states quite clearly that *Ragan* was used as a guide for determining sanctions. The Report of the Senate Committee on Armed Services recommending passage of this legislation stated:

> *Section 4* amends Article 34 of the UCMJ to require that the convening authority receive written advice of the staff judge advocate before referral of charges to a general court-martial. ... Current law, however, requires that a commander, prior to referring a case to a general court-martial, must make specific legal determinations as to the legality of the charge, legal sufficiency of the evidence, and court-martial jurisdiction. These questions can involve complex le-

gal determinations, and commanders normally rely on staff judge advocates for advice on such legal conclusions. The amendments to Article 34 will provide formal recognition of current practice, without any derogation of the commander's prerogative to make a command decision about whether a case should be tried.

\* \* \* \* \* \*

> The requirements of this Article are binding on all persons administering the UCMJ, *but failure to follow them does not constitute jurisdictional error. United States v. Ragan*, 14 [U.S.]C.M.A. 119, 33 C.M.R. 331 (1963). *Errors, if any, under this Article will be tested solely for prejudice under Article 59.*

S.Rep.No. 53, 98th Cong., 1st Sess. 16, 17 (1983), U.S.Code Cong. & Admin.News 1983, p. 2177 (emphasis added). The last paragraph of the report quoted above explicitly contradicts the Court of Military Review's conclusions in *United States v. Hayes*, 24 M.J. 786, 788, 790 (A.C.M.R. 1987)—here incorporated into Chief Judge Everett's dissent—and refutes the assertions that Congress "never contemplated" and did not intend pretrial advices to be waivable, and that *Ragan* had "lost its value as precedent."

The following exchange that occurred during the hearings further underscores the point:

> Senator Exon. Please provide for the record a citation to the authority that failure to follow the pretrial requirements does not constitute jurisdictional error.
>
> Mr. Taft. United States [v.] Ragan, 14 [U.S.]C.M.A. 119, 33 C.M.R. 331 (1963).

*Hearings on S.2521 Before the Subcomm. on Manpower and Personnel of the Senate Comm. on Armed Services*, 97th Cong., 2d Sess. 87 (1982). Clearly, other than the form of the advice, Congress did not intend to change previous practice and

---

5. The Section-by-Section Analysis in the Senate Report applies to the final version of the Act. H.R. Rep. No. 549, 98th Cong., 1st Sess. 21

(1983), U.S.Code Cong. & Admin.News 1983, pp. 2177, 2186.

impose harsher sanctions for errors in this area than those previously in effect. Instead, Congress recognized that the procedure followed at that time was to refer charges to a staff judge advocate for advice, and it wanted to codify the practice, nothing more.

R.C.M. 406(a), Manual, *supra*, requires that, "[b]efore any charge may be referred for trial by general court-martial, it shall be referred to the staff judge advocate ... for consideration and advice"; that "advice ... shall include a written and signed statement" concluding

> whether each specification alleges an offense under the code; ... the allegation of each offense is warranted by the evidence indicated in the report of investigation (if there is such a report); ... a court-martial would have jurisdiction over the accused and the offense; and ... [r]ecommend[ing] ... the action to be taken by the convening authority.

R.C.M. 601(d)(2) states that in

> *[g]eneral courts-martial* [t]he convening authority may not refer ... a charge ... unless ... [t]here has been substantial compliance with the pretrial investigation requirements of R.C.M. 405; and ... [t]he convening authority has received the advice of the staff judge advocate required under R.C.M. 406.

However, this rule also states that "[t]hese requirements may be waived by the accused."

R.C.M. 905(b)(1) requires that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue of guilt may be raised before trial." However,

> Defenses or objections based on defects (other than jurisdictional defects) in the preferral, forwarding, investigation, or referral of charges; ... [or] based on defects in the charges and specifications (other than any failure to show jurisdiction or to charge an offense, which objections shall be resolved by the military judge at any time during the pendency of the proceedings) ... *must be raised before a plea is entered.*

(Emphasis added.)

R.C.M. 905(e) makes it abundantly clear that "[f]ailure ... to raise defenses or objections or to make requests which must be made before pleas ... shall constitute waiver."

We are convinced that Congress never intended—either specifically or by logical inference—to make an Article 34 violation *per se* prejudicial or to require automatic reversal. We see no reason to forsake the guidance of *United States v. Ragan, supra*. In those cases where the staff judge advocate's pretrial advice is missing, automatic reversal is not an appropriate remedy. Instead, Courts of Military Review should proceed under a harmless-error standard and search for facts to determine whether an accused actually has been prejudiced by the omission.

Here, a good indication of harmless error can be found in the pretrial agreement and accused's guilty pleas. In addition, we note that, except for the investigating officer, all persons within the accused's chain of command recommended that he be tried by general court-martial. Where no defense motion was made to protest the absence of the pretrial advice prior to the time the accused entered his pleas and no mention of the omission was made in post-trial submissions, it might be found that the issue has been waived.

Lack of the pretrial advice is a procedural matter which, in some instances, would have no effect on the legality or the fairness of the proceedings and findings. Normally, reviewing the record of trial will tell us if the charges were serious enough to warrant trial by general court-martial and whether they were supported by evidence prior to referral. Courts of Military Review should, when faced with such a claim of error, perform this task instead of declaring that a court-martial lacks the power to proceed and automatically reversing the findings.

The certified question is answered in the negative.

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for resubmission to that court to determine if the failure to include the staff judge advocate's written pretrial advice as part of the record of trial was a matter waived by the accused or, if it was not, whether the accused was materially prejudiced by the error. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring in part and dissenting in part):

### A

Article 34 of the Uniform Code—unlike Article 32—contains no express provision that failure to comply with its provisions will not constitute a jurisdictional defect. Nonetheless, I agree with the majority opinion that, in light of the precedents of this Court, *see, e.g., United States v. Ragan*, 14 U.S.C.M.A. 119, 33 C.M.R. 331 (1963), and the applicable legislative history, failure by a staff judge advocate to provide the required pretrial advice is not a jurisdictional defect.

### B

To conclude that the omission of the required pretrial advice is not "jurisdictional," however, does not decide the issue whether this omission can be waived. The provision in Article 32(d) that a pretrial investigation is not "jurisdictional" was probably intended to prevent an accused from undertaking collateral attack on a general court-martial conviction because the pretrial investigation had been omitted. *Cf. Humphrey v. Smith*, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986 (1949) (where, by divided vote the Supreme Court rejected collateral attack on a general court-martial conviction because of failure to perform the pretrial investigation required by the Articles of War). Similarly, the legislative history of Article 34 undoubtedly reflects an intention to prevent a collateral attack on a general court-martial conviction based on failure of the staff judge advocate to prepare a written pretrial advice.

With respect to issues of waiver and prejudice because of failure to prepare the pretrial advice, I am convinced that this advice was intended by Congress to be an important procedural safeguard for an accused and therefore should not be brushed aside as insignificant, which might be the ultimate outcome arising from the majority opinion. The rationale for my view concerning waiver of the pretrial advice has been ably stated by Judge Carmichael in his recent opinion in *United States v. Hayes*, 24 M.J. 786 (A.C.M.R. 1987). There he points out that

"we believe the unsettled state of the law concerning whether the Article 34 requirement for a pretrial advice may be waived warrants further discussion.

"The Manual for Courts-Martial provides that "[b]efore any charge may be referred for trial by a general court-martial, it shall be referred to the staff judge advocate of the convening authority for consideration and advice." Manual for Courts-Martial, United States, 1984 [hereinafter M.C.M. 1984], Rule for Courts-Martial [hereinafter R.C.M. or Rule] 406(a); Military Justice Act of 1983, S. Rep. No. 53, 98th Cong., 1st Sess. 16. The advice shall apprise the convening authority, in writing, whether each specification alleges an offense under the Uniform Code of Military Justice, whether the allegation of each offense is warranted by the evidence, and whether a court-martial would have jurisdiction over both the accused and the offenses. The written advice shall conclude with the staff judge advocate's recommendation of the action to be taken by the convening authority.[3] R.C.M. 406(b); *see also* UCMJ art. 34. The pretrial advice *must* be signed by the staff judge advocate or the acting staff judge advocate, and that officer bears personal responsibility for the accuracy of its contents. Information which is incorrect or so incomplete as to be misleading may result in a defective advice, necessitating appropriate relief. *See* R.C.M. 905(b)(1) and (e)

(objection based on *inadequate* pretrial advice must be raised before plea is entered; failure to object constitutes waiver); R.C.M. 906(b)(3) (correction of defect in pretrial advice may be requested by motion for appropriate relief).

"Rule for Courts-Martial 601(d)(2) provides that:

The convening authority may not refer a specification under a charge to a general court-martial unless—

(A) There has been substantial compliance with the pretrial investigation requirements of R.C.M. 405; and

(B) The convening authority has received the advice of the staff judge advocate required under R.C.M. 406.

These requirements may be waived by the accused.

"While we are mindful that the waiver provision in R.C.M. 601(d)(2) can be interpreted as applying to the requirement that the convening authority receive written pre-referral legal advice, we conclude that such an interpretation would be contrary to Congressional intent. *See Murray*, 22 M.J. at 702–03. The legislative bases for R.C.M. 601 (d)(2) are Articles 32 and 34 of the UCMJ. With the passage of the Military Justice Act of 1983, Article 34 was amended to preclude a convening authority from referring charges to a general court-martial until in receipt of written legal determinations made by his staff judge advocate. As amended, Article 34 contains no language which, either expressly or by implication, would permit an accused to waive this required pretrial advice. Furthermore, the legislative history of the 1983 Military Justice Act shows that such a waiver was never contemplated with respect to the statutory requirements in Article 34 for a pretrial advice. *See* United States Army Legal Services Agency, *Index and Legislative History: Uniform Code of Military Justice 1983* [hereinafter *Legislative History* ], at 210–11, 530, 542–43, 590, 636, 640.

"Additional support for this Court's belief that the waiver provision of Rule 601(d)(2) does not apply to pretrial advices is found in the Rule's analysis. The analysis states in part that the waiver provision is based on Article 32(d) of the UCMJ. M.C.M., 1984, Analysis of Rule for Court-Martial [hereinafter cited as R.C.M. analysis] 601, App. 21, A21–28. Article 32, of course, does not pertain to pretrial advices, but to the requirements that charges must be investigated before they can be referred to a general court-martial for trial. Section (d) of Article 32 states that "[t]he requirements of this article are binding on all persons administering [the UCMJ] but failure to follow them does not constitute jurisdictional error." Thus, we believe the waiver provision of R.C.M. 601(d)(2) must be limited in its application to Article 32 investigations only.[4]

"Within the context of our analysis, the Article 32 requirement for a pretrial investigation and the Article 34 requirement for a pretrial advice have been treated as distinctive procedural entities. While both are preliminary procedures mandated by statute which, in practice, complement each other, the protections which they afford servicemembers facing possible trial by general court-martial differ dramatically. From the standpoint of trial tactics, there are a number of benefits which an accused may realize by his willingness to waive an Article 32 investigation on certain occasions. We are confident that these benefits are well known to military defense counsel. Because the benefits to the accused are readily discernible, his voluntary waiver of a pretrial investigation, executed with advice of counsel, is not suspect *per se* and will not be questioned by this Court barring an allegation of error involving possible prejudice. This category of waiver is "affirmative" and carries with it a presumption that it was understandingly initiated by the accused. Unlike the proposed amendment to the statutory requirements for pretrial advices, where waiver was never mentioned, Congress' intent to continue permitting accused servicemembers to waive pretrial investigations was expressly stated in the legislative history of the Military Justice Act of 1983. The pertinent history reads as follows: "Article

34(a)(2), as amended, reflects the fact that the Article 32 investigation may be waived by the accused ... but the government may require such an investigation to be held regardless of such waiver." S. Rep. No. 53, 98th Cong., 1st Sess. 17 (1983). Moreover, R.C.M. 405, which is the executive implementation of the provisions of Article 32, includes an express waiver section. Rule for Courts-Martial 405(k) states:

> The accused may waive an investigation under this rule. In addition, failure to make a timely objection under this rule, including an objection to the report, shall constitute waiver of the objection. Relief from the waiver may be granted by the investigating officer, the commander who directed the investigation, the convening authority, or the military judge, as appropriate, for good cause shown.

"Ironically, the waiver section in R.C.M. 405 is in part based on language in Article 34. The first sentence of R.C.M. 405(k), which permits an accused to waive an Article 32 investigation, is "based on Article 34(a), as amended, which expressly permits waiver of the Article 32 investigation. This is consistent with previous practice." R.C.M. 405 analysis at A 21–23 (citations omitted). On the other hand, as we noted previously, there is no language in Article 34 permitting an accused to waive, either affirmatively or by omission, the requirement that a staff judge advocate provide the convening authority with specific pre-referral legal determinations in a general court-martial. There is express language in the statute, however, which states that a convening authority may not refer any specification to a general court-martial unless he has received written advice from his staff judge advocate that the specification states an offense, that the specification is warranted by the evidence, and that there is jurisdiction over the accused and the averred offense. Consistent with the express language of Article 34, the executive rule implementing the article's requirements for pretrial advices, R.C.M. 406, does not have a waiver provision.

"Thus, despite past military decisional law that the failure to make a timely objection to a missing pretrial advice constitutes waiver, *see United States v. Ragan,* 33 C.M.R. 331 (C.M.A. 1963), we find the reasoning in *Murray,* 22 M.J. 700, to be persuasive. To the extent *Ragan* stands for the proposition that a missing pretrial advice can be waived by the defense's failure to act, we believe it has lost its value as precedent with the passage of the amended Article 34 as part of the Military Justice Act of 1983.[5]

"Prior to the amendment of Article 34 by the Military Justice Act of 1983, the convening authority personally exercised unfettered prosecutorial discretion—the staff judge advocate's legal conclusions and recommendations contained in the pretrial advice were purely advisory. *See* Manual for Courts-Martial, United States, 1969 (Rev. ed.), para 35*b*. As one discerning military author has observed:

> In response to criticism that the pretrial advice had become an administrative burden on [staff judge advocates] and commanders, Congress provided for a streamlined pretrial advice in the Military Justice Act of 1983.[6] Rather than have commanders make legal determinations about jurisdiction and the legal sufficiency of the charges, the new Article 34 requires that those determinations be made by the [staff judge advocate].
>
> A direct consequence of this change is that some prosecutorial discretion is taken away from the convening authority. If the [staff judge advocate] concludes that there is no jurisdiction to try the accused by court-martial, that the form of a charge is legally deficient, or that a charge is not warranted by the evidence in the Article 32 report of investigation, then the convening authority is precluded from referring that charge to a general court-martial.
>
> An indirect consequence of the 1983 changes to Article 34 may be that the pretrial advice has become less of a "prosecutorial tool" and become more "a substantial pretrial right of the accused."[7] Correspondingly, the role of the [staff

judge advocate] in rendering a pretrial advice may be less like a district attorney presenting a complaint to a grand jury for action and more like a quasi-judicial magistrate making a probable cause determination that protects the accused from being prosecuted on baseless charges.

Gaydos, *A Comprehensive Guide to the Military Pretrial Investigation,* 111 Mil.L. Rev. 49, 97–98 (1986) (footnotes omitted).

"In view of the requirement that the convening authority must now rely upon the written legal determinations of the staff judge advocate, "[i]t simply makes no sense to tell a convening authority that he cannot refer a case to trial without receiving key written legal determinations from his lawyer and then provided that the requirement [for such determinations] can be waived." *Murray,* 22 M.J. at 703.

"With the amendment of Article 34, we consider the issue of whether a missing pretrial advice can be waived affirmatively or by omission to be one of paramount importance. Even though under the facts and law of this case our views are *obiter dicta,* we have expressed them because we believe the absence of a pretrial advice is a matter which neither the government nor the defense should take lightly, as seemingly was done during the post-trial stages of this case. The distinction between a missing and a defective pretrial advice is a legally significant one that must not be blurred by military case law. Nor can an indiscriminate application of the waiver doctrine be permitted to blur this distinction. We agree that motions to correct defective pretrial advices must be timely made or the error is waived. R.C.M. 905(b)(1); R.C.M. 906(a) and (b)(3). In the absence of prejudicial error, this would appear to be an appropriate situation for waiver. What troubles us, however, is the application of waiver where the pretrial advice is *missing* from the trial record, and with it the means by which an appellate court is able to determine conclusively that a convening authority received the required pre-referral legal advice from his staff judge advocate. If the missing advice cannot be located, *ex post facto* affidavits and other documents are, in our opinion, poor and sometimes costly substitutes. Of far greater legal significance, however, they may prove to be unacceptable substitutes at the appellate level. Regardless, because of the legal determinations that must be made before a case can be referred for trial by general court-martial, we reject the proposition that a negative waiver—a waiver of omission—can be applied to excuse a [missing] pretrial advice. Almost inevitably, a counsel who fails to act in a situation where he has not received a copy of the pretrial advice will raise the specter of ineffective assistance of counsel. In addition, within the sphere of the requirements of Article 34, UCMJ, as amended, are issues concerning the military due process rights of the accused. *See generally United States v. Henderson,* 23 M.J. 860, 861 n.3 (A.C.M.R. 1987).

"We also reject the proposition that an affirmative waiver by an accused—who with or upon the advice of counsel voluntarily waives the requirement for a pretrial advice—can be applied to relieve a staff judge advocate from fulfilling his statutory duty of preparing a pretrial advice. While the benefits to an accused of affirmatively waiving an Article 32 investigation can easily be grasped, the benefits of affirmatively waiving an Article 34 advice are illusive at best. In the latter instance, the waiver would operate to release the staff judge advocate from fulfilling his required pretrial duties, and would permit the convening authority to act as his own lawyer. Thus, through the affirmative waiver process, the staff judge advocate would be agreeing not to provide legal advice to the convening authority in the command's most serious cases. It is doubtful that any prudent convening authority would approve such an arrangement unless he had lost confidence in his lawyer. On the opposition side of the bargaining table, the proverbial Gordian knot is tied just as tightly. The accused and his counsel would be offering up the right to have a lawyer, acting in a quasi-judicial role, determine whether the specifications state offenses, whether

they are warranted by the evidence, and whether there is subject-matter jurisdiction. Viewed from either side, the concept appears legally unsound. Suffice it to say that we cannot imagine a circumstance where we would be favorably disposed toward an agreement which included the waiver of a pretrial advice. Of course, there is an obvious solution to this problem. Counsel, staff judge advocates, and convening authorities can prevent the problem's occurrence by assuring that a *properly signed* pretrial advice is included in the general court-martial trial record.[8]

---

"[3] In the absence of such advice, this Court will not presume that the convening authority received any information from his staff judge advocate on legal matters before acting to refer a case for trial by general court-martial. The absence of a written pretrial advice is, at a minimum, a conspicuous procedural irregularity destroying any presumption of regularity to which the Government otherwise would be entitled. Its absence, in our opinion, gives rise to a rebuttable presumption that the accused was not afforded military due process in the referral of his case for trial. We believe that the statutory pretrial advice (Article 34(a), UCMJ) is a fundamental procedure of military due process in general courts-martial because, together with the pretrial investigation required by Article 32, UCMJ, 10 U.S.C. § 832, it constitutes the military equivalent of the civilian grand jury process. *See United States v. Henderson,* 23 M.J. 860, 861 n. 3 (A.C.M.R. 1987); *see generally Talbot v. Toth,* 215 F.2d 22 (D.C. Cir. 1954).

"[4] Further, if Congress had wanted a waiver provision of its pretrial advice requirement it easily could have included in Article 34 statutory language similar to that found in Article 32(d).

"[5] This Court, of course, fully recognizes that it is legally required to follow viable precedents of our high court, the United States Court of Military Appeals.

"[6] In fact, the primary objective of the 1983 Military Justice Act was "to further enhance the quality and effectiveness of the military justice system" by streamlining court-martial processing procedures so they would not prove cumbersome to commanders and staff judge advocates, especially in time of war.

"[7] We agree. *See supra* note 4.

"[8] When trial counsel states on the record that the charges have been properly referred

for trial by general court-martial, we believe he or she is officially indicating, both as an officer of the court and as a commissioned officer of the United States Army, that the staff judge advocate or acting staff judge advocate has made the required legal determinations and advised the convening authority of these matters prior to referral."

24 M.J. at 788–92.

In addition to the reasons Judge Carmichael has pointed out for refusing to invoke waiver where the required pretrial advice has not been prepared by the staff judge advocate, two other reasons seem relevant. In the first place, when the court-martial was convened, trial counsel specifically asserted that "[t]he charges had been properly referred to this court for trial." In my view, the doctrine of waiver should not be invoked to penalize the defense for relying on this misleading affirmation by the government representative.

Secondly, during oral argument, both appellate government and appellate defense counsel informed this Court that in some Army commands the staff judge advocate does not provide the defense with a copy of the pretrial advice required by Article 34, even though R.C.M. 406(c) specifically prescribes that this document "be provided to the defense if charges are referred to trial by general court-martial." This widespread disdain for the Manual requirement apparently reflects a lack of appreciation for the importance of the Article 34 pretrial advice under the new procedures authorized by the Military Justice Act. Pub.L.No. 98–209, § 4, 97 Stat. 1393, 1395 (1983). Obviously the Army Court of Military Review, in its recent decisions reversing convictions because of failure to provide the pretrial advice, has been trying to assure that this significant document receives appropriate attention. To allow invocation of the waiver doctrine undercuts a proper effort by the court below to obtain compliance with congressional intent.[1]

### C

I also perceive no occasion to have the Court of Military Review determine wheth-

---

1. In those commands where the staff judge advocate does not provide the defense with a copy of the pretrial advice, as required by R.C.M.

406(c), defense counsel is lulled into the false belief that the pretrial advice has been prepared, even when this is not the case.

er the accused "was materially prejudiced by" the failure of the staff judge advocate to perform his statutory duty. In view of the importance of the staff judge advocate's advice under the Military Justice Act of 1983—an importance ably explained by Judge Carmichael—I entertain no doubt that Murray was materially prejudiced.

Of course, not every error in a criminal proceeding requires reversal of a conviction; and despite the importance of the pretrial advice, there may be occasions when this omission should not lead to reversal of a conviction. For example, I would not automatically reverse a conviction for murder even though, after the trial had been concluded, it came to light that the staff judge advocate had failed to prepare a pretrial advice. However, when this important safeguard of military due process has been ignored, prejudice should be presumed and the burden placed on the Government of demonstrating that the error was not prejudicial. In carrying this burden, the Government may point to such circumstances as the nature of the charges, recommendations by the accused's commanding officers that he be tried by general court-martial, a recommendation for trial by general court-martial by the officer who conducts the pretrial investigation, and the sentence ultimately adjudged.

As to Murray, the presumption of prejudice clearly has not been overcome. The bribery and obstruction of justice with which he was charged concerned his paying a lab technician $80.00 to prevent his urine sample from having positive test results; and I suspect that many cases of equal or greater seriousness have been referred for trial by special court-martial. The accused had no prior convictions; and the officer conducting the Article 32 investigation recommended trial by special court-martial. The convening authority entered a pretrial agreement which called for a bad-conduct discharge, confinement for 6 months, forfeiture of two-thirds' pay per month for 6 months, and reduction to Private E-1—a sentence which a special court-martial could have adjudged. The general court-martial ultimately imposed a sentence which consisted only of a bad-conduct discharge, 6 months' confinement, and total forfeitures—a sentence which, apart from the total forfeitures, could have been imposed by a special court-martial.

**D**

Since Murray could have been sentenced to a bad-conduct discharge and 6 months' confinement by special court-martial and since the total forfeitures were reduced to partial forfeitures by the convening authority pursuant to a pretrial agreement, it might seem that the accused is as well off as if his case had been referred for trial by special court-martial—in which event, no pretrial advice would have been necessary. However, such a conclusion would ignore two circumstances.

In the first place, the very fact that a case has been referred to a general court-martial tends to elevate the sentence that will be imposed in the event of conviction, because logically the sentencing authority will consider the maximum punishment in deciding what sentence to adjudge.[2] If the charges against Murray had been referred to a special court-martial, which could have imposed no more than a bad-conduct discharge, 6 months' confinement, partial forfeitures, and reduction to pay grade E-1, the sentence adjudged might have been much less than was rendered by the general court-martial—where the maximum punishment authorized was a dishonorable discharge, 5 years' confinement, total forfeitures, reduction to E-1, and a fine. In short, sentencing authorities—whether, as here, a military judge or, as in other cases, members—tend to take into account the

**2.** This is the very reason this Court considers setting aside a sentence where the maximum punishment imposable by the court-martial is computed erroneously. *See, e.g., United States v. Bashaw,* 6 M.J. 179 (C.M.A. 1979) (generally, an instructional error on maximum confine- ment to 25 years rather than to 15 years would not be curable by reassessment of the sentence); *see also United States v. Posnick,* 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957) (accused deserves a determination of his sentence on the basis of the correct maximum sentence imposable).

maximum sentence imposable in deciding what sentence actually should be adjudged.

Secondly, it must be remembered that a punitive discharge imposed by general court-martial—whether a dishonorable discharge or a bad-conduct discharge—has more severe legal effects than does a bad-conduct discharge imposed by a special court-martial. *See, e.g.,* 38 U.S.C. § 3103(a). The former terminates automatically any possible entitlement to later benefits, while a punitive discharge adjudged by a special court-martial leaves open for adjudication by the Veterans Administration the eligibility of the accused to receive various benefits. Thus, referral of the charges to a general court-martial, rather than to a special court-martial, tended to prejudice Murray, even if it were assumed that the sentence adjudged would have been the same in either instance.

### E

Accordingly, I would affirm the decision of the court below and, with minor qualifications, would answer the certified question in the affirmative.